MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. *v.* MARGARET WHITE ET AL.
(SC 17507)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 7—officially released May 16, 2006

*Louis N. George,* with whom, on the brief, was *Stuart E. Brown,* for the appellants (defendant Willard L. Hargrove et al.).

*David F. Borrino,* for the appellee (plaintiff).

*Opinion*

KATZ, J. Two of the defendants in this foreclosure action, Willard L. Hargrove and Alaina Hargrove (defen-

dants), appeal from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, Mortgage Electronic Registration Systems, Inc.[1] The defendants contend that the trial court improperly concluded that the plaintiff's foreclosure rights were not extinguished or invalidated by a previous foreclosure action, by operation of General Statutes § 49-30[2] as a matter of law or equity, even though the plaintiff improperly had been omitted as a party to that action. We disagree, and, accordingly, we affirm the judgment of the trial court.

The record reveals the following factual and procedural background. The genesis of the present matter is a debt of $108,000 owed by the named defendant, Margaret White, to First NLC Financial Services, LLC (First Financial), which was evidenced by a promissory note dated November 8, 2000. White secured the note with a mortgage on real property located at 24 Tampa Street in the city of West Haven (city), and the mortgage was recorded on the West Haven land records (first

[1] The plaintiff, solely as nominee for Full Spectrum Lending, Inc., brought this foreclosure action against the Hargroves, Margaret White, Beneficial Mortgage Company of Connecticut and Mortgage Electronic Registration Systems, Inc. The trial court entered a default for failure to appear against White and Beneficial Mortgage Company of Connecticut. Due to the procedural posture of the present matter, unless otherwise indicated, references to the defendants are to Willard L. Hargrove and Alaina Hargrove.

[2] General Statutes § 49-30, entitled "[o]mission of parties in foreclosure actions," provides: "When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title."

mortgage). On November 15, 2000, shortly after the first mortgage had been executed, First Financial assigned that mortgage to the plaintiff, and, on August 30, 2001, the assignment was recorded on the West Haven land records.

In 2000, prior to the recording of the first mortgage, the city filed a lis pendens notice relating to certain property tax liens on the subject property. In December, 2000, and in September, 2002, respectively, the defendant Beneficial Mortgage Company of Connecticut recorded a second mortgage on the property, securing a debt of $26,332.85 and a judgment lien in the amount of $31,462.

In 2003, the city brought an action to foreclose the property tax liens (tax foreclosure action). *West Haven* v. *White*, Superior Court, judicial district of New Haven, Docket No. CV 03-0475261S (March 17, 2003).[3] The city named First Financial as a defendant but did not make the plaintiff a party to the tax foreclosure action. The trial court, *Moran, J.*, rendered a judgment of foreclosure by sale, listing the debt to the city as $17,121.12 and finding a property value of $138,000. Thereafter, Michael Quoka purchased the property for $75,500 and took title pursuant to a committee deed.[4] The trial court

[3] The tax foreclosure action was brought by the city against Margaret White, the West Haven water pollution control committee, the South Central Connecticut water authority, First Financial, Beneficial Mortgage Company of Connecticut, Leroy White, Leroya D. White, Lanita White and other "interested parties."

[4] Committee deeds are issued pursuant to General Statutes § 49-26, which provides: "When a sale has been made pursuant to a judgment therefor and ratified by the court, a conveyance of the property sold shall be executed by the person appointed to make the sale, which conveyance shall vest in the purchaser the same estate that would have vested in the mortgagee or lienholder if the mortgage or lien had been foreclosed by strict foreclosure, and to this extent such conveyance shall be valid against all parties to the cause and their privies, but against no other persons. The court, at the time of or after ratification of the sale, may order possession of the property sold to be delivered to the purchaser and may issue an execution of ejectment after the time for appeal of the ratification of the sale has expired."

thereafter issued a supplemental judgment in the tax foreclosure action indicating that $29,975.76 was disbursed to pay the city, the committee and related fees. As of January 12, 2004, the remaining $45,524.24 of the sale proceeds was held subject to further order of the court.

In June, 2004, the defendants purchased the property from Quoka via warranty deed for $243,000. This transfer was recorded on June 10, 2004, along with a mortgage on the property securing a debt in the original principal amount of $218,700 to Full Spectrum Lending, Inc.[5]

In July, 2004, the plaintiff commenced the foreclosure action at issue in this appeal (mortgage foreclosure action), alleging that it is the holder of the note and first mortgage, that the note and mortgage are in default, and that the plaintiff had exercised its option to declare the entire balance of the note due. In their answer, the defendants admitted the existence of the note and first mortgage, but denied that they were in default. They also asserted four special defenses barring the foreclosure. The first special defense contended that the plaintiff cannot enforce its mortgage because § 49-30 cured its omission from the tax foreclosure action by making the first mortgage invalid and because, as a matter of equity, the plaintiff was not entitled to recover more than it would have recovered had it been named properly in the tax foreclosure action. The defendants' other special defenses asserted: (1) unjust enrichment, on the grounds that the plaintiff was seeking to recover (a) more than it would have recovered had it been included in the tax foreclosure action, and (b) from a party that did not owe it a debt; (2) estoppel, on the ground that

---

[5] The plaintiff now serves as nominee for Full Spectrum Lending, Inc., and thus also is a defendant in that capacity in the action presently before this court. See footnote 1 of this opinion.

the lis pendens filed by the city prior to the recording of the plaintiff's assignment of the first mortgage gave the plaintiff notice of the tax lien foreclosure; and (3) accord and satisfaction, to the extent that the plaintiff's predecessor in interest, First Financial, had received any moneys in connection with the tax lien foreclosure. The defendants also asserted a counterclaim seeking a declaratory judgment that the plaintiff's mortgage is null and void because the admittedly improper omission of the plaintiff from the tax foreclosure action was cured by § 49-30.

Thereafter, the plaintiff moved for summary judgment, contending that it had established all necessary elements and that the defendants' special defenses were insufficient as a matter of law. The plaintiff also contended that it was entitled to summary judgment on the defendants' counterclaim because § 49-30 is not self-executing, and a proper action to cure the omission of the plaintiff from the tax lien foreclosure had not been brought. The defendants objected to the plaintiff's motion for summary judgment and filed a cross motion for summary judgment with their counterclaim. During a hearing on the summary judgment motions, the plaintiff explained that it was seeking summary judgment only as to liability, stating "we're not asking the court to enter a final judgment. That obviously requires an equitable consideration with regard to the value of the property and the debt and all sorts of other factors and it would not be right for summary judgment."

The trial court, *Moran*, *J.*, granted the plaintiff's motion for summary judgment as to liability only and denied the defendants' cross motion for summary judgment. In its memorandum of decision, the court concluded, without further explanation, that the defendants' reliance on § 49-30 was misplaced and that they had not provided evidence to support their special defenses. Accordingly, the court concluded that the

plaintiff has properly maintained this action and is therefore entitled to summary judgment on the issue of liability only. In response to a motion for articulation filed by the defendants, the trial court explained from the bench that § 49-30 does not apply in this case as to the defendants' counterclaim, wherein the defendants essentially were seeking to quiet title to the property, but, instead, allows the plaintiff to cure its omission from the tax foreclosure action by bringing the present foreclosure proceedings.

The defendants filed notice of their intention to appeal, after which, the plaintiff filed a motion to terminate the stay pending the appeal, which the trial court, *Curran, J.*, denied because judgment had not yet been rendered. The trial court then rendered judgment in favor of the plaintiff, finding the amount of the debt to be $124,769.81, as reflected in the plaintiff's affidavit, and ordering foreclosure by sale. The defendants did not contest the judgment as to the amount of the debt or fees awarded. This appeal followed.[6]

The defendants claim that the trial court improperly granted the plaintiff's motion for summary judgment. They contend that: (1) § 49-30, by operation of law, automatically cured the plaintiff's omission from the tax foreclosure action, by extinguishing the plaintiff's first mortgage on the property; (2) § 49-30 may be raised properly as a special defense to a foreclosure action and must be considered in order to ensure that justice is done; and (3) unjust enrichment precluded recovery for judgment on the full amount of the debt. The defendants also claim that the trial court improperly denied their motion for summary judgment on their counterclaim seeking to quiet title to the property pursuant to

---

[6] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

General Statutes § 47-31.[7] They contend that, under § 49-30, their counterclaim in this action was a "proper legal proceeding" that operated to cure the plaintiff's omission from the tax foreclosure action and thus extinguish its mortgage interest in the property.

In response, the plaintiff contends that the trial court properly rendered summary judgment in its favor as to liability because there were no disputed issues of material fact regarding the debt or the improper omission of the plaintiff from the tax lien foreclosure. The plaintiff further contends that the defendants' special defenses did not preclude summary judgment as to liability and that the defendants were not entitled to prevail under § 49-30 on their counterclaim. We agree with the plaintiff.

Guiding our inquiry as to all of the claims is our well established standard of review regarding a trial court's decision on a motion for summary judgment. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 6–7, 882 A.2d 597 (2005). "Finally, because this case distills to an issue of statutory interpretation, our review of that issue of law is plenary."

---

[7] Although the defendants' counterclaim did not expressly indicate that the claim was an action to quiet title pursuant to § 47-31, the defendants thereafter elaborated on their counterclaim in the hearing on the motion for an articulation to make clear their intention in that regard.

*Dark-Eyes* v. *Commissioner of Revenue Services*, 276 Conn. 559, 570, 887 A.2d 848 (2006).

Because, in essence, all of the defendants' claims essentially are premised on their contention that the plaintiff's encumbrance on the property has been extinguished or affected by the operation of § 49-30, we begin our analysis with an examination of this statute. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case. . . . When construing a statute, we first look to its text . . . ."[8] (Citation omitted; internal quotation marks omitted.) *Genesky* v. *East Lyme*, 275 Conn. 246, 253, 881 A.2d 114 (2005). Section 49-30 provides: "When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title."

---

[8] Although, under General Statutes § 1-2z, we may consider nontextual sources such as legislative history when the text of a statute is ambiguous, and we conclude that the meaning of § 49-30 is not plain as applied to the issue before us, we note that there is no legislative history available to shed any further light on this issue.

In support of their assertion that the plaintiff's foreclosure rights were extinguished or invalidated by the previous tax foreclosure action, by operation of § 49-30, the defendants point to the language in that statute providing that a "foreclosure or other proper legal proceedings" may cure the omission and contend that either the plaintiff's foreclosure action or the defendants' counterclaim seeking to quiet title were such proper proceedings to which the necessary parties were named—the plaintiff as the party not foreclosed in the earlier action and the defendants as the successors in interest to the party acquiring the foreclosed title. The defendants further contend that § 49-30 reflects a balancing of the equities by the legislature in which it chose to clear title in favor of a foreclosing party and its successors who inadvertently had omitted a subsequent interest from its foreclosure proceedings. According to the defendants, this balance reflects a preference for clear titles and thus deprives omitted parties of a security interest in the property but not of the debt itself, which still may be enforced against the defaulting debtor. Therefore, the defendants contend that § 49-30 either cuts off the plaintiff's interest automatically or, alternatively, requires the court, when the equities of the case so demand, as in the present case, to protect an innocent party from the consequence of a debt it did not owe.

Conversely, the plaintiff contends that such an application of § 49-30 cannot be countenanced as it would result in the taking of private property without notice and hearing in violation of due process under the state and federal constitutions. The plaintiff further contends that § 49-30 does not provide a substantive basis for discharging an encumbrance omitted from a foreclosure action, but, rather, it provides a procedural mechanism for bringing a subsequent, constitutionally valid proceeding with respect to the omitted encumbrance.

We agree with the plaintiff that its omitted mortgage interest has not been extinguished by operation of § 49-30.

Our analysis begins by noting that the statute provides that an omission may be completely cured and cleared by either deed, foreclosure or other proper proceedings to which the only necessary parties are the acquirer of the equity in the property and the party not foreclosed. See General Statutes § 49-30. Implicit in the requirement of a "proper" procedure, however, is that either of these necessary parties legally is entitled to bring such proceedings to enforce their rights. Thus, the statute does not in and of itself provide substantive rights under which title "automatically" is cleared in favor of the party invoking it.

Because there is a paucity of Connecticut appellate authority addressing the application of § 49-30, a further understanding of this matter requires an examination of the basic tenets of mortgages and foreclosure. "Generally, foreclosure means to cut off the equity of redemption, the equitable owner's right to redeem the property. . . . The equity of redemption can be cut off either by sale or by strict foreclosure." (Internal quotation marks omitted.) *National City Mortgage Co. v. Stoecker*, 92 Conn. App. 787, 793, 888 A.2d 95 (2006). "General Statutes § 49-25 sets forth the procedure pursuant to which a foreclosure sale is conducted. The purpose of the judicial sale in a foreclosure action is to convert the property into money and, following the sale, a determination of the rights of the parties in the funds is made, and the money received from the sale takes the place of the property. The vesting of title to a . . . property in the mortgagee [or lien holder] under a foreclosure decree constitutes appropriation of the property to the payment of the . . . debt, and, where the value of the property foreclosed exceeds the amount of the . . . debt, the mortgagee [or lien holder] is enti-

tled to nothing more. . . . Accordingly, when the mortgagee [or lien holder] takes title to the property, the fair market value of which exceeds the amount of the debt, its debt is satisfied by virtue of its ownership of the collateral. When the mortgagee [or lien holder] becomes the owner of the property and its debt is satisfied, its status as mortgagee [or lien holder] ceases and the rights and obligations established by the terms of the mortgage are nullified. . . .

"Under Connecticut law, the rights of the mortgagor [or debtor] in the . . . property are terminated by confirmation of the foreclosure sale, and subsequent to such sale, any interest the mortgagor [or debtor] may claim is in the proceeds of the sale solely and not in the property. . . . [A] judicial sale becomes complete and creates a legal right to obligations among parties when it is confirmed and ratified by the court. . . . Although the court's approval of a sale extinguishes the rights of redemption of other parties, it does not automatically vest title with the purchaser. General Statutes § 49-26 provides that after a sale has been ratified or confirmed by the court, a conveyance of the property sold shall be executed by the person appointed to make the sale, which conveyance shall vest in the purchaser the same estate that would have vested in the mortgagee or lienholder if the mortgage or lien had been foreclosed by strict foreclosure . . . ." (Citations omitted; internal quotation marks omitted.) Id., 794–95. Thus, the estate that passes by committee deed to a purchaser at a foreclosure sale is no more nor less than the estate that had been held by the mortgagor or lien holder, minus the interests of parties to the foreclosure action that had been terminated during the sale. If that estate is encumbered by a valid mortgage that was not foreclosed, then the estate that passes to the purchaser is subject to that mortgage. See General Statutes § 49-26 (providing that conveyance by foreclosure sale is

valid against "all parties to the cause and their privies, *but against no other persons*" [emphasis added]).

With respect to mortgages, "Connecticut follows the title theory of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property. . . . In a title theory state such as Connecticut, a mortgage is a vested fee simple interest subject to complete defeasance by the timely payment of the mortgage debt. . . . The mortgagor has the right to redeem the legal title previously conveyed by performing the conditions specified in the mortgage document.

"The mortgagee's legal title is a defeasible fee subject to an equitable right of redemption that persists until it is foreclosed." (Citations omitted; internal quotation marks omitted.) *National City Mortgage Co.* v. *Stoecker*, supra, 92 Conn. App. 792–93. It has long been established that when there is a "mortgage, having been duly recorded . . . every subsequent purchaser of any interest in the land took with constructive notice of its existence. The defendants who are now in possession cannot defeat [the] lien on the ground that they had no actual knowledge of the [e]ncumbrance, because the attorney at law, whom they employed to search the title, failed to discover or to disclose it. . . . Whatever in fact appeared upon the records, they were, so far as [the] legal title is concerned, conclusively presumed to know." (Citation omitted.) *Ensign* v. *Batterson*, 68 Conn. 298, 305, 36 A. 51 (1896).

Thus, at common law, when a party with a valid encumbrance on the property had been omitted from, or received defective notice of, a foreclosure action, that party's right of redemption was not extinguished. See *Washington Trust Co.* v. *Norwich & Westerly Traction Co.*, 89 Conn. 59, 64–65, 92 A. 880 (1915) ("[The]

second mortgagee['s] [right] to redeem the first mortgage does not appear to have been cut off by the foreclosure sale. The purchaser at that sale took no better title than the first mortgagee would have taken by a strict foreclosure . . . and as the plaintiff was not a party to that suit its right of redemption was not cut off by the judgment. . . . In the absence of a finding that the plaintiff's rights were actually litigated and determined in that action, the mere filing of an intervening petition [in a foreclosure action to which it was not a party], which was never acted on, cannot operate by estoppel as the equivalent of a foreclosure of the plaintiff's equity of redemption." [Citations omitted.]).

At common law, then, a second mortgagee who had not been made a party to foreclosure proceedings brought by the first mortgagee was unaffected by those proceedings. Consequently, the relations of the second mortgagee to the first *and* the relations between the second mortgagee and the mortgagor remained unchanged. The question therefore arose as to whether, when a second mortgagee had been omitted from the foreclosure proceedings and thus its encumbrance remained on the property subject to redemption, the mortgagor retained the right to redeem that mortgage or whether the first mortgagee had, by virtue of its foreclosure, succeeded to the owner's right to redeem the second mortgage. This court concluded that the mortgagor who had been foreclosed in the first foreclosure action nonetheless should be able to redeem the property through his relationship with the second mortgagee. Indeed, we reasoned that, "[t]he right to redeem the second mortgagee may be a valuable privilege to the mortgagor even after the foreclosure by the first [e]ncumbrancer; it may enable him to reclaim his estate; and it would seem as he should only be deprived of this right by a proceeding instituted by the voluntary act of the second mortgagee, or by his own; at least

not by the act of the first mortgagee, professing in his bill to assert no other privilege than that conferred by the first mortgage." *Goodman* v. *White*, 26 Conn. 317, 323 (1857); see also *Ensign* v. *Batterson*, supra, 68 Conn. 305; *Loomis* v. *Knox*, 60 Conn. 343, 350, 22 A. 771 (1891); *Colwell* v. *Warner*, 36 Conn. 224, 234, 235 (1869). Thus, "a title derived through a foreclosure could be totally negated if a subsequent encumbrancer had been omitted from that foreclosure." D. Caron, Connecticut Foreclosures (4th Ed. 2004) § 24.02A, p. 529. As a result, a question arose as to whether, in order to remedy the defect, a new action of foreclosure should be brought against the omitted encumbrancer alone or whether the prior foreclosure proceeding should be deemed void. Id.

It is against this background that the legislature enacted § 49-30, originally codified as General Statutes § 693 (f) in 1941, to address the omission of a party from a foreclosure action. The statute first provides that, when there has been a foreclosure and a party with an interest has been omitted from that proceeding, for any reason, all parties who *were* foreclosed by the judgment are bound as fully as if no omission had occurred and do not retain any equity or right to redeem. See footnote 2 of this opinion. The statute then provides that the omission "may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title." General Statutes § 49-30. Because we construe statutes to change common law "only if the language of the legislature plainly and unambiguously reflects such an intent"; (internal quotation marks omitted) *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001); it is clear that, except to the extent that the statute explicitly so pro-

vides, § 49-30 does not abrogate the aforementioned common law pertaining to mortgages and foreclosures. See *DaimlerChrysler Services North America, LLC* v. *Commissioner of Revenue Services*, 274 Conn. 196, 216, 875 A.2d 28 (2005) (noting rule of construction that legislature expressly must state if it intends to abrogate common-law right).

As this court explained in *Milici* v. *Ferrara*, 133 Conn. 141, 144, 48 A.2d 562 (1946), "[b]efore [§ 49-30], if a first mortgagee foreclosed the mortgage without making a second mortgagee a party to the proceeding the second mortgagee might redeem the first mortgage, and the mortgagor, still having a right to redeem the second mortgage, might, by so doing, acquire the right of the second mortgagee to redeem the first. *Loomis* v. *Knox*, [supra, 60 Conn. 350]; 2 [L.] Jones, Mortgages (8th Ed. [1928]) § 1355. The statute has no effect upon the rights of the parties where a second mortgagee brings an action to foreclose a third mortgagee who has not been made a party to a previous action of foreclosure brought by the former. . . . [T]he third mortgagee [has] the same right he would have had if the statute had not been passed, namely, the right to redeem [the plaintiff second mortgagee's] mortgage." Thus, as *Milici* explains, the effect of § 49-30 was to change the common-law rights of parties who *had been included* in the first foreclosure by statutorily foreclosing all of their interests, including the right to redeem through an omitted party. The statute does not change the rights of those parties who had been omitted from the first foreclosure.

Against this background and in light of the facts presently before us, the fallacy of the defendants' contentions become obvious. The plaintiff, by virtue of its assignment from the mortgagee, holds legal title to the property subject to complete defeasance by the timely payment of the mortgage debt. At the time the mortgage

was executed, White, the mortgagor, had the right to redeem the legal title. The foreclosure sale and resulting transfer by committee deed to Quoka, the defendants' predecessor in interest, is valid against White and the other parties to that tax foreclosure action. This is so despite the fact that the plaintiff improperly had been omitted from that action, because, under § 49-30, "all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate." Thus, White, who had been a party to the tax foreclosure action, was divested of all interest in the property, including the right to redeem through the plaintiff in the future. Similarly, under § 49-26, pursuant to which Quoka obtained the property by committee deed; see footnote 4 of this opinion; the transfer is not valid against those persons who were not parties to the tax lien foreclosure, including the plaintiff, who continues to hold legal title to the property subject to complete defeasance by payment of the debt.

Thus, under § 49-30, the parties whose interests were foreclosed in the previous tax lien foreclosure are not necessary to quiet title because, once properly foreclosed, those interests remain so. Based on the change to the common law effected by the first sentence of § 49-30, parties such as White, who once may have had a right to redeem the first mortgage through the omitted party, no longer need to be included in the action.

As we previously have noted, § 49-30 does not change the common-law rights of those parties who had been omitted from the first foreclosure and thus does not create substantive rights. The second sentence of § 49-30 merely clarifies that the omission of the plaintiff from the tax lien foreclosure may be cured in a proper proceeding between the only necessary parties, the defendants and the plaintiff. The plaintiff's foreclosure

action does not seek to do anything other than foreclose on its interest. Thus, there has been no such proceeding to cure any other defect and, § 49-30, which does not otherwise affect the plaintiff's interest in the property, certainly does not operate to divest the plaintiff of its interest.

The defendants do not contest the plaintiff's standing as the holder of a validly recorded interest in the property. Indeed, they have admitted that the plaintiff was improperly omitted from the tax lien foreclosure. In other words, they have alleged no facts that deny the plaintiff's interest in the property or serve to divest it of its interest.[9] Accordingly, we conclude that the trial court properly granted the plaintiff's motion for summary judgment as to liability.

Similarly, the defendants' counterclaim seeking to quiet title does not reflect any facts that provide a legal basis to extinguish or affect the plaintiff's interest in the property. Because we already have concluded that § 49-30 does not provide a substantive basis otherwise to clear the title as a matter of law, we also conclude

---

[9] With respect to the defendants' claim that the trial court improperly rendered summary judgment because the plaintiff will be unjustly enriched in this foreclosure action as a result of having been omitted from the tax foreclosure action, we note that the defendants did not allege that the plaintiff's interest would have been essentially without value or foreclosed had it been included in the tax lien foreclosure. Cf. *Federal Deposit Ins. Corp.* v. *Bombero*, 37 Conn. App. 764, 770–73, 657 A.2d 668 (1995) (affirming judgment granting foreclosing mortgagee discharge of mistakenly omitted junior lien holder where, at all relevant times, defendant's junior lien, although valid as matter of law, was found to be worthless as matter of fact), appeal dismissed, 236 Conn. 744, 674 A.2d 1324 (1996). Therefore, the trial court properly rendered summary judgment in favor of the plaintiff as to liability. To the extent that the defendants were attempting to raise issues concerning the valuation of the plaintiff's right to recovery, we note that the defendants did not contest the judgment rendered on May 9, 2005, finding the amount of the debt to be $124,769.81, as reflected in the plaintiff's affidavit, and ordering foreclosure by sale. Thus, the record in this case does not afford us an opportunity to undertake an examination of any issues pertaining to valuation.

that the trial court properly denied the defendants' cross motion for summary judgment on its counterclaim.

The judgment is affirmed.

In this opinion the other justices concurred.