******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MICHAEL D. REINER ET AL. *v.* JEFFREY A. REINER ET AL.
## (AC 41010)

DiPentima, C. J., and Prescott and Bright, Js.

*Syllabus*

The plaintiff, who was a beneficiary of certain irrevocable trusts, sought to recover damages from the defendant, the sole trustee to and another beneficiary of the trusts, for his alleged tortious mismanagement of certain real properties owned by the trusts, which were encumbered by mortgages. Prior to trial, the parties, in an effort to settle the tort action, signed a release and settlement agreement, which included a provision that provided that following the death of the settlor of the trusts, E, the plaintiff would buy out the defendant's interests in certain of the trust properties, and the buyout amount of each property was to be calculated on the basis of the fair market value of the property, multiplied by the plaintiff's interests in the property and reduced by 10 percent. That provision did not refer to the mortgages associated with the properties. The agreement also provided that E would immediately transfer by warranty deed two properties to the plaintiff and the defendant, and upon E's death, the defendant would purchase the plaintiff's interests in those two properties under the same fair market valuation, but reduced by 4 percent rather than 10 percent. In accordance with the settlement agreement, the plaintiff withdrew the tort action in 2012. The buyout provisions of the settlement agreement were triggered in 2017 following E's death. After the case was restored to the docket, the defendant filed a motion to enforce the settlement agreement. Thereafter, the trial court held an evidentiary hearing on the motion pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.* (225 Conn. 804). At the hearing, the defendant maintained that the settlement agreement was clear and unambiguous that the buyout amount of the properties was to be calculated as the plaintiff's proportionate interest in the equity in the properties, after deducting the debt secured by any mortgages, less the percentage discounts, while the plaintiff insisted that the settlement agreement was clear and unambiguous that the buyout amount was to be based solely on the fair market value of the properties, without regard to the mortgages on the properties. The trial court accepted the plaintiff's interpretation and concluded that the agreement was clear and unambiguous that the buyout amount was to be calculated as the fair market value of the properties regardless of any debt associated with the properties. The trial court then denied the defendant's motion to enforce the settlement agreement, and the defendant appealed to this court. *Held* that although the trial court incorrectly concluded that the settlement agreement was clear and unambiguous with respect to the method for calculating the buyout price of the plaintiff's interests in the properties, as the language of the agreement was susceptible to more than one reasonable interpretation, the court properly denied the defendant's motion to enforce the settlement agreement: the agreement did not define the term interest, which was used inconsistently therein, the common meaning of the term interest did not provide certainty, and the buyout provision reasonably could have been interpreted as meaning either that the plaintiff's interest in the properties was the fair market value without consideration of the mortgages on the properties, as found by the trial court, or that the plaintiff's interests in the properties were to be limited to his equitable share of the value of the properties after deducting the underlying debt as secured by any mortgages, as argued by the defendant; nevertheless, although the trial court incorrectly concluded that the buyout provisions of the settlement agreement were clear and unambiguous, this court affirmed the trial court's denial of the motion to enforce the settlement agreement on the alternative ground that the agreement was not clear and unambiguous and, therefore, could not be enforced summarily pursuant to *Audubon Parking Associates Ltd. Partnership*.

Argued February 14–officially released May 28, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of fiduciary duty, and for other relief, brought to the Superior Court in the judicial district of Hartford; thereafter, the plaintiffs withdrew the action in accordance with the parties' settlement agreement; subsequently, the trial court, *Robaina, J.*, granted the named defendant's motion to restore the case to the docket; thereafter, the court denied the named defendant's motion to enforce the parties' settlement agreement, and the named defendant appealed to this court. *Affirmed.*

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellant (named defendant).

*Gary J. Greene*, for the appellee (named plaintiff).

*Opinion*

BRIGHT, J. The present appeal stems from a dispute over the interpretation of a settlement agreement between, among others, the plaintiff Michael D. Reiner[1] and the defendant Jeffrey A. Reiner.[2] The defendant appeals from the judgment of the trial court, rendered after a hearing pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811–12, 626 A.2d 288 (2010) (*Audubon*),[3] denying his motion to enforce the agreement. On appeal, the defendant claims that the court improperly concluded that the settlement agreement is clear and unambiguous, as construed by the plaintiff.[4] We conclude that the contested sections of the agreement are not clear and unambiguous and, accordingly, we affirm the judgment of the trial court denying the defendant's motion to enforce the agreement on the alternative ground that a settlement agreement that is not clear and unambiguous cannot be enforced through an *Audubon* hearing.[5]

The following procedural history and undisputed facts are relevant to this appeal. The plaintiff and the defendant are brothers who were two of the three primary beneficiaries of four irrevocable trusts (Reiner Trusts) that were established by their parents, Eleanore Reiner and Leo P. Reiner.[6] The defendant was the sole trustee of the Reiner Trusts. The Reiner Trusts owned several parcels of real property (Reiner Trusts properties) that had a substantial value; however, a majority of the properties were encumbered by mortgages. Eleanore Reiner also was the sole member of 711 Farmington, LLC, and Canton Gateway, LLC. 711 Farmington, LLC, and Canton Gateway, LLC, each owned a single parcel of real property, both of which were encumbered by a mortgage. After a dispute arose regarding the Reiner Trusts properties, the plaintiff, in 2011, commenced the present action and several other parallel actions against the defendant alleging that he tortiously had mismanaged the Reiner Trusts properties. On July 5, 2012, the plaintiff, the defendant, and several other individuals and entities associated with the Reiner Trusts executed a settlement agreement to resolve the present action, the parallel actions, and other disputes. In the agreement, the plaintiff agreed to withdraw with prejudice the then pending actions, and all parties to the agreement agreed to a comprehensive mutual release. The agreement contained several provisions in which the defendant agreed to buy out the plaintiff's interests in certain properties after the death of Eleanore Reiner. The following buyout provisions are directly at issue in this appeal.

Section 1 (a) of the agreement provides: "[The defendant] shall buyout [the plaintiff's] interests in the Reiner Trusts and the Reiner Trusts Properties by paying cash to [the plaintiff] in proportion to his interests therein

no later than 280 days following Eleanore Reiner's death. The buy-out amount payable to [the plaintiff] for his interests in the Reiner Trusts will be based on the fair market value of each of the Reiner Trusts Properties at the time of Eleanore Reiner's death, multiplied by [the plaintiff's] interests in each Trust Property with a deduction of ten (10%) percent to compensate for a minority discount and for the fact that there is no real estate brokerage commission." Section 1 (b) of the agreement detailed the manner in which the fair market value for each of the Reiner Trusts properties was to be determined. The parties also agreed that the parties' "interests" in the Reiner Trusts properties accurately were set forth in the " 'Trust Property Schedule,' " which was attached to the agreement. That attachment, prepared on June 27, 2012, individually detailed the percentage of the Reiner Trusts properties owned by each party, but not the then-existing value of the properties or the amount of any equity in the properties in light of any mortgages on them.

Section 2 of the agreement provides in relevant part: "In connection with the execution and delivery of this Agreement, Eleanore Reiner will immediately transfer, by Warranty Deeds (i) her interests (as sole member of 711 Farmington, LLC) in 711 Farmington as follows: two thirds (2/3) to [the defendant] and one-third (1/3) to [the plaintiff] in the form of warranty deed attached to this Agreement . . . and (ii) her interests (as sole member of Canton Gateway, LLC) in Canton Gateway as follows: three fourths (3/4) to [the defendant] and one-fourth (1/4) to [the plaintiff] in the form of warranty deed attached to this Agreement . . . . Such transfers are being made upon the following conditions . . . .

"[The defendant] shall buy out [the plaintiff's] interests in each [of] 711 Farmington and Canton Gateway by paying cash to [the plaintiff] no later than 280 days following Eleanore Reiner's death. The determination of the fair market value of 711 Farmington and Canton Gateway will be based on the same formula and terms used to determine the fair market value of the Reiner Trust Properties provided for in [§] 1 (a) of this Agreement above except that the valuation shall be subject only to a four percent (4%) discount, not ten percent (10%). [The defendant] will have 280 days from the date of Eleanore Reiner's death, to obtain financing and consummate the buyout."

On July 11 and 13, 2012, the plaintiff withdrew the present action with prejudice in accordance with the agreement. Nevertheless, on July 25, 2012, the defendant filed a motion in which he requested that the court set aside the withdrawal and reinstate the action on the ground that the plaintiff had violated the agreement by soliciting a "side deal" with Eleanore Reiner to permit him to lease a property owned by her in Florida, which property was governed by § 10 of the agreement.

On July 27, 2012, the plaintiff also filed a motion to restore the case to the docket. On September 10, 2012, the court restored the case to the docket. Over the course of the next four and one-half years, the parties engaged in litigation concerning the Florida property and other collateral issues stemming from the agreement. None of those issues are the subject of this appeal.

On April 7, 2017, the defendant filed the motion to enforce the agreement that is the subject of this appeal. Therein, he argued that certain buyout provisions of the agreement had been triggered as a result of the recent death of Eleanore Reiner, and that a dispute existed between himself and the plaintiff as to the interpretation of those provisions. In particular, Eleanore Reiner's death triggered the defendant's obligation, under § 2 of the agreement, to buy out the plaintiff's one-third interest in 711 Farmington and his one-quarter interest in Canton Gateway. Her death also triggered the defendant's obligation, under § 1 of the agreement, to buy out the plaintiff's interest in the Reiner Trusts properties, including 603 Farmington Avenue in Hartford.[7] The plaintiff and the defendant were unable to reach an agreement on how to determine the price that the defendant was to pay the plaintiff for his interests in the properties. The defendant claimed that the buyout price of the plaintiff's interests is intended to be calculated as the plaintiff's proportionate interest in the equity in the properties, after deducting the debt secured by any mortgages, less the percentage discounts. The defendant requested that the court adjudicate the dispute by enforcing the agreement in accordance with his interpretation.

On April 17, 2017, the plaintiff filed an objection to the defendant's motion to enforce the agreement.[8] Therein, the plaintiff disagreed with the defendant's interpretation and advanced his own contrary interpretation of the agreement. The plaintiff maintained that the settlement agreement clearly and unambiguously provides that the buyout amount is to be " 'based on the fair market value' of each of the properties," which amount did not include consideration of the existing mortgages on the properties.

On August 10, 2017, the defendant filed a supplemental memorandum in support of his motion to enforce the agreement. In his supplemental memorandum, the defendant argued that the agreement clearly and unambiguously provides that the amount of the buyout must take into consideration the mortgages on the properties. The defendant argued that a contrary interpretation would be in conflict with Connecticut mortgage jurisprudence, and would result in an absurd result in the form of a substantial unintended windfall for the plaintiff.[9]

On October 23, 2017, following an *Audubon* hearing,

the court issued a memorandum of decision in which it denied the defendant's motion to enforce the agreement and concluded that the agreement was clear and unambiguous in conformance with the plaintiff's interpretation.[10] In particular, even though it heard extrinsic evidence regarding what the parties intended by the buyout provisions, the court expressly constrained its analysis to the four corners of the agreement and reasoned that "the terms of the agreement are clear and unambiguous and that the parties did enter into a valid agreement. The agreement, negotiated extensively by and between sophisticated parties, does not refer to 'equity' as a basis for valuation. The agreement clearly and unambiguously states that the buyout amount will be based on the fair market value of each property and the proportionate interests of the parties being taken into consideration refer to the agreed upon percentage interests [as] listed in the Trust Property Schedule. . . .

"The contract provision as to buying out the plaintiff's interest requires determining the fair market value of the property by the method described in the contract itself. By comparison, [§] 3 of the agreement (160 Farmington) makes specific reference to mortgages and prohibits financing or modification of existing mortgages without the consent of the plaintiff. Similarly, references to mortgages are found in [§] 9 (White Pine), and [§] 10 (Florida property). Further, the listing of the trust properties, which is entitled 'Trust Property Schedule– Date Prepared 6/27/2012,' lists the properties with the percentage of ownership in each the plaintiff, the defendant, and their sibling, without reference to mortgages. Finally, the term 'equity,' commonly understood to mean the difference between the fair market value and the encumbrances on a property, does not appear in any relevant portion of the agreement." (Citation omitted.) This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the relevant standard of review and legal principles that govern our review. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit." (Citations omitted; internal quotation marks omitted.) *Audubon*, supra, 225 Conn. 811. "Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial." (Emphasis omitted.) Id., 812. Nevertheless, the right to enforce summarily a settlement agreement is not unbounded. "The key element with regard to the settlement agreement in *Audubon* . . . [was] that there

[was] no factual dispute as to the terms of the accord. Generally, [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement." (Internal quotation marks omitted.) *Reid & Riege, P.C.* v. *Bulakites*, 132 Conn. App. 209, 216, 31 A.3d 406 (2011), cert. denied, 303 Conn. 926, 35 A.3d 1076 (2012). "The rule of *Audubon* effects a delicate balance between concerns of judicial economy on the one hand and a party's constitutional rights to a jury and to a trial on the other hand. See [*Audubon*], supra, [810–12]; see also *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 534–35, 4 A.3d 288 (2010). To use the *Audubon* power outside of its proper context is to deny a party these fundamental rights and would work a manifest injustice." *Matos* v. *Ortiz*, 166 Conn. App. 775, 792, 144 A.3d 425 (2016); see *DAP Financial Management Co.* v. *Mor-Fam Electric, Inc.*, 59 Conn. App. 92, 97–98, 755 A.2d 925 (2000) ("The test of disputation . . . must be applied to the parties at the time they entered into the alleged settlement. To hold otherwise would prevent any motion to enforce a settlement from ever being granted.").

"A settlement agreement, or accord, is a contract among the parties." *Ackerman* v. *Sobol Family Partnership, LLP*, supra, 298 Conn. 532. "When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 341, 152 A.3d 1230 (2016).

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the

contract is ambiguous." (Internal quotation marks omitted.) Id., 341–42. "[T]he determination as to whether contractual language is plain and unambiguous is . . . a question of law subject to plenary review." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 325 Conn. 146, 157–58, 156 A.3d 477 (2017).[11]

On appeal, there is no dispute between the parties that the agreement is valid and enforceable, and that §§ 1 and 2 of the agreement mandate that the defendant buy out the plaintiff's interests in certain properties. Instead, the parties' views diverge as to the method by which the buyout amount is to be calculated. The defendant claims that the court improperly concluded that the agreement clearly and unambiguously provides that the buyout amount is the fair market value of the properties. He argues that the clear and unambiguous language of the agreement specifies that the buyout amount is the plaintiff's equitable interest in the properties, namely, the fair market value of the properties less the amount of any mortgage encumbrances. In response, the plaintiff argues that the court properly determined that the agreement clearly and unambiguously provides that the buyout amount is the fair market value of the properties without regard to any debt associated with the properties. We disagree with both parties and conclude that the agreement is ambiguous with respect to the calculation of the buyout of the plaintiff's interests in the properties.

As noted previously, § 1 (a) of the agreement provides: "[The defendant] shall buyout [the plaintiff's] interests in the Reiner Trusts and the Reiner Trusts Properties by paying cash to [the plaintiff] in proportion to his interests therein no later than 280 days following Eleanore Reiner's death. The buy-out amount payable to [the plaintiff] for his interests in the Reiner Trusts will be based on the fair market value of each of the Reiner Trusts Properties at the time of Eleanore Reiner's death, multiplied by [the plaintiff's] interests in each Trust Property with a deduction of ten (10%) percent to compensate for a minority discount and for the fact that there is no real estate brokerage commission." Section 2 (b) of the agreement provides in relevant part that "[the defendant] shall buy out [the plaintiff's] interests in each [of] 711 Farmington and Canton Gateway by paying cash to [the plaintiff] no later than 280 days following Eleanore Reiner's death. The determination of the fair market value of 711 Farmington and Canton Gateway will be based on the same formula and terms used to determine the fair market value of the Reiner Trust Properties provided for in [§] 1 (a) of this Agreement above except that the valuation shall be subject only to a four percent (4%) discount, not ten percent (10%). . . ."

Section 1 applies to the defendant's buyout of the plaintiff's interests in the Reiner Trusts properties,

including 603 Farmington Avenue. With respect to 603 Farmington Avenue, the language of § 1 provides that the buyout amount will be determined on the basis of the fair market value multiplied by the plaintiff's *interest*, less a percentage discount. For the following reasons, we conclude that it is neither clear nor certain whether the word "interest" was intended, as the defendant contends, to mean the plaintiff's percentage interest in the equity in the properties, or, as the plaintiff contends, to mean the plaintiff's ownership percentage of the fair market value of the properties.

First, the agreement does not define "interest," and that term has no talismanic meaning as utilized throughout the agreement. For example, the parties agreed that the Trust Property Schedule attached to the agreement set forth their and Nancy Brooks' interests in the Reiner Trusts properties. That attachment lists the parties' respective percentage ownership in each of the Reiner Trusts properties and is devoid of the then-existing mortgage valuation for each property. Conversely, § 1, upon which the plaintiff and the court relied, provides that, if the defendant refinances one or more of the Reiner Trusts properties to fund his buyout of the plaintiff's interests in other properties, the interest of the third beneficiary of the Reiner Trusts, Nancy Brooks, in the refinanced properties cannot be diminished. The defendant is required to provide her with value in other properties or cash sufficient to offset any reduction in the value of her interest as a result of the refinancing. This language suggests that the parties agreed that a beneficiary's interest in a property is determined by taking into account any outstanding debt associated with the property. Accordingly, the inconsistent use of the term "interest" makes it unclear whether that term was intended to include or to exclude outstanding debt on the properties.

Second, the common meaning of the term "interest" provides no certainty. As applicable here, interest is defined as "[a] legal share in something; all or part of a legal or equitable claim to or right in property . . . ." Black's Law Dictionary (10th Ed. 2014); see Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) (defining "interest" to mean "right, title, or legal share in something"). In real estate transactions, interest could be intended to mean, among other things, equitable or legal ownership. See generally *Salce* v. *Wolczek*, 314 Conn. 675, 683–96, 104 A.3d 694 (2014) (determining that phrase "any ownership interest . . . is transferred" encompassed transfers of both legal and equitable interests). As the defendant properly emphasizes, "Connecticut follows the title theory of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property." (Internal quotation marks omitted.) *Mortgage Electronic Registration Systems, Inc.* v. *White*, 278 Conn. 219, 231,

896 A.2d 797 (2006). Accordingly, because the plaintiff did not have legal title to certain properties as they were still encumbered by mortgages, it is a reasonable interpretation that his interest was equitable, and the buyout amount was limited to his share of the worth of the properties after deducting the underlying debt on the properties as secured by any mortgages. Furthermore, such an interpretation would avoid what might be viewed as an absurd result of the buyout amount being substantially greater than the entire net value of the property. See footnote 9 of this opinion; see also *Welch* v. *Stonybrook Gardens Cooperative, Inc.*, 158 Conn. App. 185, 198–99, 118 A.3d 675 (recognizing principle that "[w]e will not construe a contract's language in such a way that it would lead to an absurd result" and that "contractual documents are to be read as a whole and bizarre results are to be avoided" [internal quotation marks omitted]), cert. denied, 318 Conn. 905, 122 A.3d 634 (2015).

In contrast, as the plaintiff and the court recognize, the agreement does not specify that the plaintiff's interest was equal to his equity, and § 1 does not make reference to mortgages.[12] On the basis of the foregoing, we conclude that § 1 is subject to two reasonable interpretations as it relates to the defendant's obligation to purchase the plaintiff's interest in the Reiner Trusts properties, including 603 Farmington Avenue. We, therefore, disagree with the court's conclusion that the language is clear and unambiguous.

We reach the same conclusion as to the defendant's obligation under § 2 to purchase the plaintiff's interests in 711 Farmington and Canton Gateway. Section 2 applies to the defendant's buyout of the plaintiff's interests in 711 Farmington and Canton Gateway. As noted previously, § 2 (b) incorporates the formula for determining fair market value from § 1 (a). Nevertheless, § 2 (b), unlike § 1 (a), does not state that the purchase of the plaintiff's interests in the two properties is to be based on fair market value. Instead, § 2 (b) merely provides, in relevant part, that "[the defendant] shall buy out [the plaintiff's] interests in each [of] 711 Farmington and Canton Gateway by paying cash to [the plaintiff] . . . . The determination of the fair market value of 711 Farmington and Canton Gateway will be based on the same formula and terms used to determine the fair market value of the Reiner Trust Properties provided for in [§] 1 (a) of this Agreement above . . . ." Although it can be argued that the reference to fair market value in § 2 (b) implies that it must be the basis for valuing the plaintiff's interests, the language is certainly not clear and unambiguous. The language of § 2 (b) simply does not state how the price for the plaintiff's interests in the two properties is to be determined. Furthermore, to the extent that this language is understood to adopt the buyout amount formula in § 1 (a), it does not clarify the ambiguity in that section as to

whether the plaintiff's interest is to be determined after consideration of the debt associated with the properties.

In sum, each party has set forth a reasonable interpretation of the buyout provisions, with both interpretations having bases in the language used in the agreement. We conclude, therefore, that the agreement is ambiguous with respect to the method of calculation of the buyout amounts because the intent of the parties is not clear and certain from the language of the agreement. As noted previously, settlement agreements can be enforced summarily pursuant to *Audubon* only when they are clear and unambiguous. That is not the case here. Consequently, although the court properly denied the defendant's motion to enforce the agreement, it incorrectly determined that the agreement is clear and unambiguous, and, thus, the court's declaration of the meaning of the contract has no legal effect. We affirm the court's denial of the defendant's motion on the alternative ground that the buyout provisions of the agreement at issue are not clear and unambiguous.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The Sheila Reiner Trust for Her Children, The Michael D. Reiner Trust for His Children, and Connecticut LLC Irrevocable Trust also were named as plaintiffs in this action. For clarity, we refer to Michael D. Reiner individually as the plaintiff.

[2] Although Jeffrey A. Reiner is one of twenty-two defendants in this action, he is the only defendant who appealed; therefore, we refer to him individually as the defendant.

[3] "A hearing pursuant to *Audubon* [supra, 225 Conn. 811–12], is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law." *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 499 n.5, 4 A.3d 288 (2010).

[4] The defendant also claims on appeal that the court improperly considered extrinsic evidence in connection with the *Audubon* hearing. In light of our conclusion that it was improper for the court to have concluded that the language of the settlement agreement was clear and unambiguous, we need not reach the defendant's other claim.

[5] "Where the trial court reaches a correct decision but on [alternative] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive [alternative] ground for which there is support in the trial court record." (Internal quotation marks omitted.) *Heisinger* v. *Cleary*, 323 Conn. 765, 776 n.12, 150 A.3d 1136 (2016).

[6] Nancy Brooks, the sister of the plaintiff and the defendant, was the third primary beneficiary of the trusts.

[7] Although the defendant's initial appellate brief does not mention 603 Farmington Avenue, he subsequently filed an errata sheet in which he maintains that 603 Farmington Avenue is the only property at issue under § 1. The plaintiff does not dispute that the buyout of 603 Farmington Avenue also is at issue in this appeal.

[8] In that filing, the plaintiff principally requested that the court deny the defendant's motion, but also sought enforcement of the agreement in accordance with his own interpretation. Despite the contradictory language used in the plaintiff's April 17, 2017 filing, we treat it as an objection. See *Briere* v. *Greater Hartford Orthopedic Group, P.C.*, 325 Conn. 198, 217, 157 A.3d 70 (2017) (*Robinson, J.*, concurring) (interpretation of pleadings is question of law); see also *Farren* v. *Farren*, 142 Conn. App. 145, 156, 64 A.3d 352 (substance of relief sought by motion, not form, is controlling), cert. denied, 309 Conn. 903, 68 A.3d 658 (2013).

[9] For instance, if the parties equally shared a property that had a fair market value of $1 million and that was encumbered by $900,000 of underlying

debt, the buyout amount, pursuant to the plaintiff's construction, would be $500,000. As a result, the defendant would be obligated to pay the plaintiff five times the amount of the actual equity in the property.

[10] The judgment file is inconsistent with the court's memorandum of decision. The judgment file states "that the parties' settlement agreement [is to] be enforced as set forth in the memorandum of decision [regarding the defendant's] motion to enforce settlement agreement issued on October 23, 2017." In the memorandum of decision, the court denied the defendant's motion to enforce the agreement and, despite its conclusion that the agreement was clear and unambiguous in accordance with the plaintiff's interpretation, the court did not enforce the agreement. The court's memorandum of decision is controlling. See *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 529 n.1, 893 A.2d 389 (2006) ("[w]hen there is an inconsistency between the judgment file and the oral or written decision of the trial court, it is the order of the court that controls because the judgment file is merely a clerical document, and the pronouncement by the court . . . is the judgment" [internal quotation marks omitted]).

[11] We emphasize that the scope of our review is narrow and requires us to determine only whether the language of the buyout provision is ambiguous. We do not decide which party has the better interpretation, only whether there is more than one reasonable interpretation of the contract language at issue. See *Salce* v. *Wolczek*, 314 Conn. 675, 683, 104 A.3d 694 (2014).

[12] The plaintiff and the court also rely on the references to mortgages in §§ 3, 9, and 10 of the agreement to conclude that the parties intentionally omitted consideration of the mortgages from § 1. We are unpersuaded that these collateral references establish that § 1 is clear and unambiguous. In § 3, the defendant agreed to buy out Connecticut LLC Trust's interest in another parcel of real property "by paying . . . the sum equal to (i) $700,000 plus (ii) forty-nine [percent] (49%) of any principal pay down on the mortgage on" that property. This language sets forth a precise mathematical formula to produce a number "*equal to*" the buyout price for the property at issue. (Emphasis added.) By contrast, § 1 states that the buyout of the plaintiff's interests in the Reiner Trusts properties "will be *based on*" the fair market value of each of the properties. (Emphasis added.) "Based on" and "equal to" may have been intended by the parties to have the same meaning, but that is not necessarily so. As the defendant points out in his brief, " 'based on' typically notes that something is a first step and more will be done in addition. . . . [The] [d]efendant argues that this additional step was calculating the equity in the properties to determine the value of the plaintiff's interest in them." We do not express a view as to which argument regarding the impact of § 3 on the interpretation of § 1 is more reasonable. See footnote 11 of this opinion. We simply note that the court's reliance on § 3 to support its conclusion that § 1 is clear and unambiguous was misplaced. Further, we do not view §§ 9 and 10 as in anyway helpful to a determination of the meaning of § 1. Sections 9 and 10 are not buyout provisions but, rather, govern the transfer of properties through Eleanore Reiner's will. The fact that the sole beneficiary of §§ 9 and 10 received the property as encumbered upon Eleanore Reiner's death provides no insight as to how the plaintiff and the defendant intended the buyout provisions between them to work.

[13] Although we conclude that this aspect of the agreement cannot be enforced pursuant to *Audubon*, this does not foreclose the parties' ability, if they are unable to reach an extrajudicial resolution of their dispute, to seek other avenues of recovery on the basis of the agreement. See *Matos* v. *Ortiz*, supra, 166 Conn. App. 809 ("while [a settlement agreement] may still be enforceable through ordinary procedural channels, these are hardly the circumstances that give rise to a right to summary enforcement under *Audubon*").