******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JOHN DOE ET AL. *v.* BRUCE BEMER ET AL.
(AC 44555)

Moll, Suarez and Vertefeuille, Js.

*Syllabus*

The plaintiffs, who were allegedly victims of sexual contact with and exploitation by the defendant while they were minors, sought to recover damages from the defendant for, inter alia, assault and battery. Prior to trial, the parties entered into confidential settlement agreements, which included waiver provisions that provided that, in the event of a default by the defendant, the parties consented to the reinstatement of the action to the docket to enforce the agreements and waived any objection to the trial court's continuing jurisdiction beyond four months otherwise proscribed by statute (§ 52-212a). In accordance with the settlement agreements, the plaintiffs withdrew the action in November, 2019. In April, 2020, the defendant failed to make a payment pursuant to the agreements, and the plaintiffs filed a motion to restore the action to the docket. The defendant objected, claiming that his performance was excused due to breaches of the settlement agreements by the plaintiffs and their counsel. The court denied the plaintiffs' motion to restore and, thereafter, denied the plaintiffs' motions for reargument/reconsideration, and the plaintiffs appealed to this court. The trial court thereafter marked off the plaintiffs' motion to enforce the settlement agreements, stayed the proceedings, and denied their motion to reconsider, and the plaintiffs filed an amended appeal. *Held*:

1. The trial court did not abuse its discretion in denying the plaintiffs' motion to restore the case to the docket: although the basis for the court's ruling was ambiguous, as it was not clear whether the court found that it did not have the power to grant the plaintiffs' untimely motion to restore because the plaintiffs failed to demonstrate fraud or whether it exercised its discretion in denying the motion because it determined the matter was not amenable to summary disposition and should be adjudicated in a breach of contract action, the plaintiffs did not seek an articulation of the court's decision and, thus, this court assumed the court acted properly; moreover, contrary to the plaintiffs' claim that the court ignored the settlement agreements' four month waiver provisions in denying the motion to restore, the court specifically referenced that provision and never found as a predicate to the application of the waiver provisions that the defendant was in default; furthermore, the parties remained free to bring a separate action for breach of contract to address their claims.

2. The trial court did not abuse its discretion in denying the plaintiffs' amended motion to reargue and reconsider its denial of their motion to restore the case to the docket, this court having determination that the trial court properly denied the plaintiffs' motion to restore; the court reasonably could have rejected the plaintiffs' argument that the waiver provisions applied, as both the plaintiffs and the defendant claimed a breach of the agreements by the other and the court had been presented with conflicting evidence and arguments on that issue.

3. The plaintiffs could not prevail on their claim that the trial court improperly failed to hold a hearing in accordance with *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.* (225 Conn. 804), as that case was inapplicable to the facts of this case: as the court did not abuse its discretion in denying the plaintiffs' motion to restore the matter to the docket, its failure to conduct a hearing to make findings as to the enforceability of the settlement agreements was not improper, as the court could not have conducted a hearing on a matter that had been erased from the docket.

4. The plaintiffs could not prevail on their claim that the trial court lacked the authority to refuse to rule on their motion to enforce the settlement agreements; the case had not been restored to the docket and, thus, there was no pending matter in which the plaintiffs properly could file a motion to enforce the settlement agreements.

5. This court declined to review the plaintiffs' claim that the trial court

improperly denied their motion to set aside the appellate stay and to order enforcement of the settlement agreements, as this court had denied the relief requested in the plaintiffs' motion for review of the denial of their motion to terminate the appellate stay.

Argued May 16—officially released October 4, 2022

*Procedural History*

Action to recover damages for, inter alia, assault and battery, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the judicial district of Fairfield, where the action was withdrawn as to the defendant William Trefzger; thereafter, the plaintiffs withdrew the action in accordance with the parties' settlement agreements; subsequently, the court, *Welch, J.*, denied the plaintiffs' motions to restore the action to the docket and for reargument and reconsideration and their amended motion for reargument and reconsideration, and the named plaintiff et al. appealed to this court; thereafter, the trial court failed to adjudicate the motion of the named plaintiff et al. to enforce the settlement agreements, denied their motion for reconsideration relating to the disposition of their motion to enforce the settlement agreements, and denied their motion to terminate the appellate stay, and the named plaintiff et al. filed an amended appeal. *Affirmed.*

*Kevin C. Ferry*, with whom, on the brief, was *Monique Foley*, for the appellants (named plaintiff et al.).

*Wesley W. Horton*, with whom were *Brendon P. Levesque*, and, on the brief, *Ryan P. Barry*, for the appellee (named defendant).

*Opinion*

SUAREZ, J. The plaintiffs John Doe and Bob Doe,[1] who had brought an action against the defendant Bruce Bemer[2] that had been withdrawn in accordance with settlement agreements of the parties, appeal from the judgment of the trial court denying their motion for an order restoring the action to the docket (motion to restore) and from the court's denials of their motion for reargument and reconsideration and amended motion for reargument and reconsideration. The plaintiffs also filed an amended appeal challenging the court's failure to adjudicate and marking off their motion to enforce the settlement agreements, its denial of their motion for reconsideration relating to the disposition of their motion to enforce the settlement agreements, and the denial of their motion to terminate an appellate stay. On appeal, the plaintiffs claim that (1) the denial of their motion to restore constituted harmful error, (2) the denial of their motion to reconsider the denial of their motion to restore was clearly erroneous, (3) the hearing on their motion to restore was inadequate and the court improperly failed to hold a hearing "with testimony from witnesses regarding the enforceability of the agreements" in accordance with *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993) (*Audubon*), (4) the court did not have the authority to refuse to rule on the plaintiffs' motion to enforce the settlement agreements, and (5) the court improperly refused to grant their motion to terminate an appellate stay and to order enforcement of the settlement agreements. We disagree with the plaintiffs and affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of the plaintiffs' claims on appeal. On April 27, 2017, the plaintiffs commenced an action against the defendant in connection with the defendant's alleged sexual contact with and exploitation of the plaintiffs while they were minors. In an amended complaint, the plaintiffs alleged claims against the defendant for assault and battery, reckless and wanton conduct, and intentional infliction of emotional distress. Their case was one of nine cases against the defendant that had been consolidated.

The parties subsequently entered into confidential settlement agreements. Those agreements contained similar confidentiality clauses that required the parties not to "disclose or cause to be disclosed any of the terms of [the] [s]ettlement [a]greement, directly or indirectly . . . ." Each agreement also contained a clause titled "Consent to Reinstate Action to the Docket" (waiver provisions). The waiver provisions provided in relevant part: "In the event of a default by [the defendant] the parties hereto consent to the reinstatement of the civil action to the [c]ourt's [d]ocket solely for

purposes of enforcing this [s]ettlement [a]greement against the defaulting party and the entry of the [j]udgment under the terms indicated above. The parties hereby waive any and all objection to the [c]ourt's continuing jurisdiction pursuant to [Practice Book] § 17-4 and [General Statutes (Rev. to 2019)] § 52-212a[3] and otherwise waive any objection based upon the four month limitation otherwise prescribed by the [r]ules of [p]ractice and the . . . [s]tatutes, solely for the purposes of entry of the stipulated judgment." (Footnote added.)

In light of the settlement agreements, on November 15, 2019, the plaintiffs filed a withdrawal of the action, which indicated that they were withdrawing the action "as to all defendants without costs to any party." Thereafter, on November 20, 2019, the defendant filed a motion to file documents under seal, which was granted by the court in an order dated December 9, 2019. That same day, the court issued the following order: "As this case has been reported settled, case flow is directed to place this case on the settled but not withdrawn list for May 1, 2020."

On April 27, 2020, after the defendant failed to make a second payment pursuant to the settlement agreements, the plaintiffs filed the motion to restore that is the subject of this appeal, asking the court to restore the matter to the docket. According to the plaintiffs, the December 9, 2019 order of the court placing the "case on the settled but not withdrawn list" rescinded their prior withdrawal of the action and "ordered this matter as still pending, with the matter currently scheduled to be withdrawn on or about May 1, 2020." (Emphasis omitted.) The plaintiffs, thus, argued, on the one hand, that the matter was still pending and, on the other hand, that it should be restored to the docket.

The defendant filed an objection to the motion to restore in which he explained that the second payment was not made as a result of breaches of the settlement agreements. Specifically, the defendant claimed that the plaintiffs' counsel breached the settlement agreement pertaining to John Doe by publicizing certain information about the agreement on counsel's website and that Bob Doe breached his settlement agreement with the defendant by disclosing the settlement to his real estate attorney. For that reason, the defendant claimed, his performance under the settlement agreements was excused and, thus, he was not in default. The defendant also argued that, pursuant to § 52-212a, the court lacked jurisdiction to restore the case to the docket because the motion to restore was filed more than four months after the case was withdrawn, and that the court could not have placed the case on the settled but not withdrawn docket in December, 2019, when the case already had been withdrawn in November, 2019. In response to the defendant's jurisdictional argument, the plaintiffs

argued that, pursuant to the waiver provisions in the agreements, the parties expressly had waived the four month requirement of § 52-212a in the case of a default by the defendant.

A remote hearing on the motion to restore and the objection thereto was held on October 5, 2020. The court commenced the hearing by asking counsel for the parties whether, based on the exhibits[4] that were filed, they agreed that there were settlement agreements filed and signed by all parties, to which each counsel responded in the affirmative. At the hearing and in their subsequent posttrial motions, the parties accused each other of having breached the settlement agreements. The plaintiffs allegedly breached due to the online publication of information concerning the settlement of John Doe's case by his attorney in January, 2020, and because of a disclosure made by Bob Doe to his real estate attorney. The defendant allegedly breached as a result of certain documents filed by his attorney with the court after the settlements had become effective, including a case flow request filed on November 9, 2019, which indicated that the matter had settled.

In an order dated December 30, 2020, the court rendered judgment denying the plaintiffs' motion to restore. After citing case law concerning the finality of withdrawals, the four month time limitation for filing motions to restore a case to the docket under § 52-212a, and the power of a court to vacate or open a judgment beyond the four month period when the judgment is obtained by fraud, duress, or mutual mistake, the court stated: "The court has carefully reviewed the pleadings, memoranda, exhibits, and the transcript of the remote hearing. The court finds that the parties entered into private mediation and, as a result of the mediation, agreed to resolve all issues [that] were the subject of this litigation. The parties executed thorough and extensive agreements outlining the parties' rights and obligations. As a result of the private mediation and the execution of the agreements, the plaintiffs filed a withdrawal of the action. The court finds that the defendant's motion to seal [the] file shortly after the withdrawal or the court's order dated December 9, 2019, did not restore the case to the court's docket. "'[T]he motion to restore a case to the docket is the vehicle to open a withdrawal . . . .'" *Law Offices of Frank N. Peluso*, *P.C.* v. *Cotrone*, 178 Conn. App. 415, 421, 175 A.3d 613 (2017). As to the plaintiffs' motion to restore, the parties have argued extensively that the parties entered into certain agreements. The plaintiffs and the defendant each claim that the other has materially breached the agreement[s] in various ways. Each party claims a breach of contract." The court concluded that it had not been provided with a legal basis on which it could restore the case to the docket.

On January 19, 2021, the plaintiffs filed a motion for reargument and reconsideration of the denial of their motion to restore, claiming that the court misapprehended the pertinent facts and overlooked principles of law in denying the motion to restore. On that same day, the plaintiffs also filed a motion to enforce the settlement agreements and for the court to render judgment in accordance with the terms of those agreements.

The plaintiffs' January 19, 2021 motion for reargument and reconsideration of the denial of the motion to restore was denied by the court without explanation by an order dated February 16, 2021. Prior to that ruling, the plaintiffs had filed an amended motion for reargument and reconsideration to correct a scrivener's error in their first motion for reargument and reconsideration. In an order dated February 22, 2021, the court addressed the second motion, stating: "The motion for reargument/reconsideration was denied on [February 16, 2021]. See [prior] order . . . ." Thereafter, on February 25, 2021, the plaintiffs filed an appeal with this court challenging the denial of their motion to restore, as well as the denials of their motions for reargument and reconsideration.

The trial court subsequently issued two orders related to the plaintiffs' motion to enforce the settlement agreements. In an order dated March 2, 2021, the court stated: "The court has been advised that an appeal has been filed in this matter. . . . Accordingly, the motion which was marked take the papers on [February 1, 2021] is marked off." In an order dated March 15, 2021, the court stated: "The plaintiff[s] marked the motion for [an] order [to enforce the settlement agreements] . . . 'take papers' on the March 12, 2021 short calendar. . . . Pursuant to Practice Book § 61-11, '[i]f an appeal is filed, such proceedings shall be stayed until the final determination of the cause.' " On March 5, 2021, the plaintiffs also filed a motion for reconsideration of the court's order marking off their motion to enforce the settlement agreements and failing to adjudicate the motion, which the court denied in a similar order explaining that the proceedings had been stayed in light of the pending appeal. Thereafter, on March 23, 2021, the plaintiffs filed a motion for termination of the appellate stay, which the court denied. On April 5, 2021, they filed an amended appeal challenging the court's failure to adjudicate their motion for an order to enforce the settlement agreements, their motion for reconsideration thereof, and the court's denial of their motion to terminate the appellate stay. Additional facts and procedural history will be set forth as necessary.

I

The plaintiffs' first claim on appeal concerns the court's denial of their motion to restore the case to the docket. Specifically, the plaintiffs claim that the denial

of their motion to restore constituted harmful error, and they raise a number of arguments in support of that claim. Before we reach the merits of those arguments, we first set forth our standard of review of the trial court's denial of the motion to restore and general principles governing such motions.

"This court has stated previously that [t]he question of whether a case should be restored to the docket is one of judicial discretion[5] . . . therefore, we review a court's denial of a motion to restore a case to the docket for abuse of that discretion. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . Inherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . A court's discretion must be informed by the policies that the relevant statute is intended to advance. . . . When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court. . . . Under that standard, we must make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; footnote added; internal quotation marks omitted.) *Palumbo* v. *Barbadimos*, 163 Conn. App. 100, 110–11, 134 A.3d 696 (2016).

"The right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by [General Statutes] § 52-80, is absolute and unconditional. Under [the] law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket. . . . The court unless [the action] is restored to the docket cannot proceed with it further . . . . [I]f the parties should stipulate that despite the withdrawal the case should continue on the docket, or if it should be restored on motion of the plaintiff and the defendant should thereafter expressly or by implication waive any claim of lack of jurisdiction, the court could properly proceed with it." (Citation omitted; internal quotation marks omitted.) *Daigneault* v. *Consolidated Controls Corp./Eaton Corp.*, 89 Conn. App. 712, 714–15, 875 A.2d 46, cert. denied, 276 Conn. 913, 888 A.2d 83 (2005), cert. denied, 546 U.S. 1217, 126 S. Ct. 1434, 164 L. Ed. 2d 137 (2006).

A "motion to restore a case to the docket is the vehicle to open a withdrawal, while the motion to open is the vehicle to open judgments." (Internal quotation marks omitted.) *Law Offices of Frank N. Peluso, P.C.*

v. *Cotrone*, supra, 178 Conn. App. 421. Pursuant to § 52-212a, a civil judgment may be opened or set aside only within four months of the date of the judgment, unless the parties waive the four month provision. That statute "is applicable not only to the opening of a case that has proceeded to judgment but also to the restoration of a withdrawn case. . . . Accordingly, a motion to restore a withdrawn case is seasonable only if it is filed within four months of the withdrawal." (Citation omitted; internal quotation marks omitted.) Id., 422. "It is [also] well established that [a] judgment rendered may be opened after the four month limitation . . . if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake. . . . [Because] [t]his court has concluded that withdrawals are analogous to final judgments . . . § 52-212a and its exceptions for fraud, lack of actual consent and mutual mistake apply to restoring cases to the docket as well as to opening final judgments." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Hebert*, 105 Conn. App. 736, 740, 939 A.2d 625 (2008).

With these principles in mind, we turn to the court's decision denying the plaintiffs' motion to restore. In its decision, the court thoroughly outlined the arguments raised by the parties in relation to the motion to restore, including the plaintiffs' claim that the parties explicitly had "agreed to reserve the court's jurisdiction past the usual four month period in case of a default by the defendant." The court stated that it "carefully reviewed the pleadings, memoranda, exhibits, and the transcript of the remote hearing," at which the plaintiffs also argued that the defendant had engaged in fraudulent conduct following the settlements. After explaining the procedural posture of the case, including the private mediation entered into by the parties, the thorough and extensive settlement agreements executed by them, and the plaintiffs' withdrawal of the action, the court found that, with respect to the motion to restore, "[t]he plaintiffs and the defendant each claim[ed] that the other [had] materially breached the agreement[s] in numerous ways." It concluded that it had not been provided with a legal basis on which to restore the case to the docket and denied the motion to restore.

Affording every reasonable presumption in favor of upholding the court's ruling, we cannot conclude that the court abused its discretion in denying the plaintiffs' motion to restore. We first note that the basis for the court's ruling is ambiguous. The court set forth the relevant law concerning withdrawals and motions to restore, including the four month period under § 52-212a in which a motion to restore must be filed to be seasonable, the fact that restoring a case to the docket is a matter of judicial discretion, and the court's power to open any judgment after the four month period that has been obtained by fraud, duress, or mutual mistake.

Thereafter, the court concluded that it had not been provided with a basis on which to open the judgment. It is not entirely clear from that statement whether the court found that it did not have the power to grant the untimely motion to restore because the plaintiffs had failed to demonstrate fraud[6] by the defendant or whether the court simply exercised its discretion in denying the motion because it determined that the matter was not amenable to summary disposition and should be adjudicated in a breach of contract action.

"As a general matter, it is incumbent on the appellant to provide an adequate record for review. See Practice Book § 61-10; *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian*, 53 Conn. App. 122, 127, 728 A.2d 1140 (1999). To the extent that the court's decision is ambiguous . . . it was [the appellant's] responsibility to seek to have it clarified." (Internal quotation marks omitted.) *DiRienzo Mechanical Contractors, Inc.* v. *Salce Contracting Associates, Inc.*, 122 Conn. App. 163, 169, 998 A.2d 820, cert. denied, 298 Conn. 910, 4 A.3d 831 (2010). "[O]ur appellate courts often have recited, in a variety of contexts, that, in the face of an ambiguous or incomplete record, we will presume, *in the absence of an articulation*, a trial court acted correctly, meaning that it undertook a proper analysis of the law and made whatever findings of the facts were necessary. See, e.g., *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 482, 586 A.2d 1157 (1991) ([if] an appellant has failed to avail himself of the full panoply of articulation and review procedures, and absent some indication to the contrary, we ordinarily read a record to support, rather than to contradict, a trial court's judgment)." (Emphasis in original; internal quotation marks omitted.) *Zaniewski* v. *Zaniewski*, 190 Conn. App. 386, 396–97, 210 A.3d 620 (2019). In the present case, the plaintiffs did not seek an articulation of the court's decision. Thus, in the absence of a motion for articulation, we assume that the court acted properly. See *Fitzgerald* v. *Fitzgerald*, 61 Conn. App. 162, 164, 763 A.2d 669 (2000).[7]

The plaintiffs' primary argument[8] challenging the court's denial of their motion to restore is that the court "improperly ignored the clear and unambiguous waiver of the four month rule contained in the settlement agreements, which enabled it to restore the case to the docket." That argument fails for two reasons. First, the court specifically referenced that claim in its decision denying the motion to restore. Given the court's finding that the parties each were claiming breaches of the settlement agreements, the court reasonably could have concluded that the plaintiffs failed to demonstrate the applicability of the waiver provisions in the settlement agreements when it stated that it had not been provided with a basis on which to restore the case to the docket. That is also evident from the fact that the court never found that the defendant was in default, which is a necessary predicate for the waiver provisions to apply.

Moreover, the problem with the plaintiffs' argument is that it assumes the applicability of the waiver provisions, namely, that the defendant breached or was in default of the settlement agreements. The issue of whether the waiver provisions applied, however, is far from settled. If, as the defendant claims, the plaintiffs, through their attorney and through Bob Doe's communication with his real estate agent, breached the confidentiality provisions of the agreements and if that occurred prior to the defendant's nonpayment and other claimed breaches of the agreements, the defendant may have been relieved of his obligations under the agreements. In turn, if the defendant was not in default, the waiver provisions of those agreements would not apply to excuse the plaintiffs' filing of the motion to restore beyond the statutory four month period. The court found that "[e]ach party claims a breach of contract," and this finding is clearly supported by the record. The issue of whether the actions of the plaintiffs' attorney and Bob Doe violated the confidentiality provisions of the agreements, which will require a careful examination of the settlement agreements and a determination of, inter alia, whether counsel was bound by the confidentiality provision[9] of John Doe's agreement or whether his actions constituted a violation under an agency theory, is complex. Accordingly, we cannot conclude on the record before us that the court acted in clear abuse of its discretion in denying the motion to restore.[10] The parties are free to bring a separate action for breach of contract to address their claims.

## II

The plaintiffs next claim that the court improperly denied their amended motion for reargument and reconsideration[11] of the denial of their motion to restore. We disagree.

We first set forth our standard of review for this claim. "[I]n reviewing a court's ruling on a motion to open, reargue, vacate or reconsider, we ask only whether the court acted unreasonably or in clear abuse of its discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *First Niagara Bank, N.A.* v. *Pouncey*, 204 Conn. App. 433, 440, 253 A.3d 524 (2021); see also footnote 6 of this opinion.

The court summarily denied the plaintiffs' amended motion for reargument and reconsideration,[12] and the plaintiffs did not seek an articulation of the basis of the court's decision. The plaintiffs argue that the court overlooked and ignored the language of the waiver provisions in the settlement agreements. We are not per-

suaded.

In its decision denying the motion to restore, the court specifically referenced the plaintiffs' argument regarding the applicability of the waiver provisions in the case of a default by the defendant, found that the plaintiffs and the defendant each were claiming breaches of the settlement agreements by the other, and concluded that it had not been provided with a basis on which to restore the case to the docket. On the basis of its findings, the court reasonably could have rejected the plaintiffs' argument that the waiver provisions applied, especially when each side was claiming a breach by the other and the court had been presented with conflicting evidence and arguments on that issue. In light of our determination that the court properly denied the plaintiffs' motion to restore, the court did not abuse its discretion in denying the plaintiffs' amended motion to reargue and reconsider that decision. See *LendingHome Marketplace, LLC* v. *Traditions Oil Group, LLC*, 209 Conn. App. 862, 873, 269 A.3d 195 (2022) ("[b]ecause there was no error in the court's ruling [denying a motion to open], we also conclude that the court did not abuse its discretion in denying the defendant's motion to reargue/reconsider").

### III

The plaintiffs' next claim is that the court improperly failed to hold a hearing in accordance with *Audubon*. We conclude that *Audubon* is not applicable to the facts of this case.

We first set forth our standard of review for this claim. "Whether *Audubon* applies is a pure question of law to which we apply plenary review. See *Gershon* v. *Back*, 201 Conn. App. 225, 244, 242 A.3d 481 (2020) ('[t]he plenary standard of review applies to questions of law'), cert. granted, 337 Conn. 901, 252 A.3d 364 (2021); *Matos* v. *Ortiz*, [166 Conn. App. 775, 791, 144 A.3d 425 (2016)] (explaining that whether *Audubon* applies is 'a pure question of law')." *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 815, 277 A.3d 200 (2022).

In their appellate brief, the plaintiffs argue that they were present at the hearing on October 5, 2020, and ready to provide "testimony[13] regarding the agreements and the nature and extent of the claimed breaches" but that the court improperly failed or refused "to hold a hearing to address the sum and substance of the agreements and their enforceability. . . . [T]he court only addressed the first part of *Audubon*. Specifically, the court, in its written decision, acknowledges that the parties unequivocally agree that there was an agreement . . . and that the terms were clear and unambiguous . . . but it never addresse[d] the second part relative to the enforceability of the agreement. Under *Audubon*, the court should have held a hearing, with

testimony and evidence to address the enforceability of the agreement[s]. In this case, the trial court indicated that it was taking the papers on [the] plaintiffs' motion to restore the case to the docket." (Footnote added.) They expand on this argument further in their appellate reply brief, stating: "Nowhere in *Audubon* does it stand for the proposition . . . that 'where there are other breach claims being made by both sides' . . . the case cannot be restored to the docket or summary enforcement [cannot] take place. . . . Here, the trial court noted that each party claimed that the other party breached the terms. As such . . . the parties in this case were entitled not only to an *Audubon* hearing, but restoration to the docket as well as summary enforcement." The plaintiffs are mistaken in their assertion that *Audubon* applies to the restoration of a case to the docket.

This court recently addressed the purpose of an *Audubon* hearing in *Kinity* v. *US Bancorp*, supra, 212 Conn. App. 791, stating: "In *Audubon*, our Supreme Court shaped a procedure by which a trial court could summarily enforce a settlement agreement to settle litigation. . . . The court held that 'a trial court may summarily enforce a settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement.' " (Citation omitted; emphasis omitted.) Id., 815; see also *Reiner* v. *Reiner*, 190 Conn. App. 268, 270 n.3, 210 A.3d 668 (2019) ("[a] hearing pursuant to *Audubon* . . . is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law" (citation omitted; internal quotation marks omitted)). In *Reiner* v. *Reiner*, supra, 268, we further stated: "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. . . . Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial. . . . Nevertheless, the right to enforce summarily a settlement agreement is not unbounded. The key element with regard to the settlement agreement in *Audubon* . . . [was] that there [was] no factual dispute as to the terms of the accord. Generally, [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement."[14] (Citations omitted; internal quotation marks omitted.) Id., 276–77. An *Audubon* hearing typi-

cally follows a party's filing of a motion to enforce a settlement agreement, and the hearing is conducted to determine whether the agreement is sufficiently clear and unambiguous to be summarily enforced. See id., 273.

In *Audubon*, after the parties had reached a settlement agreement and the action had been withdrawn, the defendant failed to abide by the terms of the agreement, which prompted the plaintiff to seek to restore the case to the docket by filing a timely motion to open. *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 806–807. The trial court granted the motion to open and ordered jury selection to begin on a subsequent date. Id., 807. Thereafter, the plaintiff filed a motion for judgment in accordance with and enforcement of the settlement agreement, and the court, following a hearing, rendered judgment against the defendants in accordance with the settlement agreement. Id. Likewise, in *Reiner*, the plaintiff withdrew his action after the parties reached a settlement agreement. *Reiner* v. *Reiner*, supra, 190 Conn. App. 273. Subsequently, the plaintiff filed a timely motion to restore the case to the docket, which was granted, and the defendant filed a motion to enforce the settlement agreement. Id. Following an *Audubon* hearing, the court denied the defendant's motion to enforce the agreement, concluding that "the agreement was clear and unambiguous in conformance with the plaintiff's interpretation." Id., 275. On appeal, this court reversed the judgment of the trial court on the ground that the agreement could not be enforced summarily because it was not clear and unambiguous. Id., 283–84.

The key difference between *Reiner* and the present case is that, in *Reiner*, the action had been restored to the docket within the four month period of § 52-212a prior to when an *Audubon* hearing was held. That is, there was a pending case on the docket in which an *Audubon* hearing could be held. Similarly, in *Audubon*, the action had been timely restored to the docket before the court summarily enforced the settlement agreement. *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 807. In the present case, the court denied the plaintiffs' motion to restore, which we already have determined was not an abuse of discretion. The issue before the court in deciding whether to grant or to deny the motion to restore was whether the matter could or should be restored to the docket, not whether the terms of the settlement agreements were "sufficiently clear and unambiguous so as to be enforceable as a matter of law." (Internal quotation marks omitted.) *Reiner* v. *Reiner*, supra, 190 Conn. App. 270 n.3. Because the issue in an *Audubon* hearing—the enforceability of a settlement agreement— is entirely separate from and unrelated to the restoration of a case to the docket, the court's failure to conduct an *Audubon* hearing in

relation to the plaintiffs' motion to restore and to make findings regarding the enforceability of the settlement agreements was not improper.

Moreover, as we have stated previously in this opinion, unless an action has been restored to the docket, a court cannot proceed with it further. See *Palumbo* v. *Barbadimos*, supra, 163 Conn. App. 111; see also *Law Offices of Frank N. Peluso, P.C.* v. *Cotrone*, supra, 178 Conn. App. 421 (effect of withdrawal of action is analogous to erasure of case from docket). To the extent that the plaintiffs' claim regarding an *Audubon* hearing relates to their motion to enforce the settlement agreements, the court could not have conducted a hearing on a matter that had been erased from the docket, let alone decide whether the agreement was sufficiently clear and unambiguous to be summarily enforced. See part IV of this opinion.

The plaintiffs' claim regarding an *Audubon* hearing, therefore, fails.

IV

The plaintiffs' next claim is that the court did not have the authority to refuse to rule on their motion to enforce the settlement agreements. The outcome of this claim is dictated by our resolution of the claim in part III of this opinion.

The following additional facts are relevant to this claim. After the plaintiffs filed a motion to enforce the settlement agreements but before the motion was decided, the plaintiffs filed an appeal challenging the denial of their motion to restore. Thereafter, the court issued two orders related to the plaintiffs' motion to enforce the settlement agreements. In an order dated March 2, 2021, the court stated: "The court has been advised that an appeal has been filed in this matter. . . . Accordingly, the motion which was marked take the papers on [February 1, 2021] is marked off." In an order dated March 15, 2021, the court stated: "The plaintiff[s] marked the motion for [an] order [to enforce the settlement agreements] . . . 'take papers' on the March 12, 2021 short calendar. . . . Pursuant to Practice Book § 61-11, '[i]f an appeal is filed, such proceedings shall be stayed until the final determination of the cause.' "

On March 5, 2021, the plaintiffs filed a motion for reconsideration of the court's order marking off their motion to enforce the settlement agreements and failing to adjudicate the motion, which the court denied in a similar order explaining that the proceedings had been stayed in light of the pending appeal. On appeal, the plaintiffs argue that it was improper for the court not to adjudicate their motion to enforce the settlement agreements. We agree with the court's action but for a reason different from the one on which the court relied. See *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d

985 (2005) ("[i]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason" (internal quotation marks omitted)). Because the case had not been restored to the docket, there was no pending matter in which the plaintiffs properly could file a motion to enforce the settlement agreements. For these reasons, the plaintiffs' claim fails.

## V

The plaintiffs' last claim is that the court improperly denied their motion to set aside the appellate stay and to order enforcement of the settlement agreements. We decline to review this claim.

After the court denied the plaintiffs' motion for reconsideration of the court's order marking off their motion to enforce the settlement agreements and failing to adjudicate the motion, the plaintiffs filed a motion to terminate the appellate stay for the purpose of permitting the court to adjudicate their motion to enforce the settlement agreements. After the court denied the motion to terminate the appellate stay, the plaintiffs filed a motion for review with this court, which granted review but denied the relief requested therein.

Pursuant to Practice Book § 61-14, "[t]he sole remedy of any party desiring the court to review an order concerning a stay of execution shall be by motion for review under Section 66-6." "Issues regarding a stay of execution cannot be raised on direct appeal." (Internal quotation marks omitted.) *Santoro* v. *Santoro*, 33 Conn. App. 839, 841, 639 A.2d 1044 (1994); see also *East Hartford Housing Authority* v. *Morales*, 67 Conn. App. 139, 140, 786 A.2d 1134 (2001). Although the plaintiffs filed a motion for review of the denial of their motion to terminate the appellate stay, this court denied the relief requested therein. The plaintiffs cannot now challenge that ruling on appeal. Accordingly, we decline to review this claim. See *Santoro* v. *Santoro*, supra, 841–42 (dismissing amended appeal taken from granting of motion to terminate stay when appellant had filed motion for review of stay order, which this court denied as to relief requested).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Adam Doe also was a plaintiff at trial but is not involved in this appeal. In this opinion, we refer to John Doe and Bob Doe collectively as the plaintiffs or individually by the pseudonyms designated in the amended complaint and as ordered by the court. See Practice Book § 11-20A (h).

[2] William Trefzger also was named as a defendant, but the action subsequently was withdrawn as against him. Therefore, our references in this opinion to the defendant are to Bemer.

[3] Our references in this opinion to § 52-212a are to the 2019 revision of the statute.

[4] The settlement agreements entered into by the parties were admitted as exhibits at the hearing.

[5] In their brief, the plaintiffs cite this principle—that the question of restoring a case to the docket is one of judicial discretion—but then cite the clearly erroneous and plenary standards of review and argue that, because no findings of fact were made by the trial court, our review of the court's

denial of their motion to restore is plenary. The plaintiffs are incorrect in this assertion, as it is well established that an abuse of discretion standard applies to a trial court's decision granting or denying a motion to restore. See *Palumbo* v. *Barbadimos*, 163 Conn. App. 100, 110, 134 A.3d 696 (2016); *Banziruk* v. *Banziruk*, 154 Conn. App. 605, 611, 109 A.3d 494 (2015); *Travelers Property Casualty Co. of America* v. *Twine*, 120 Conn. App. 823, 826, 993 A.2d 470 (2010); *Chartouni* v. *DeJesus*, 107 Conn. App. 127, 128, 944 A.2d 393, cert. denied, 288 Conn. 902, 952 A.2d 809 (2008).

[6] In their appellate brief, the plaintiffs argue that "[t]he defendant's fraudulent tactics . . . afforded the trial court the ability to restore the case to the docket." In their motion to restore, the plaintiffs did not seek to restore the case to the docket on the basis of fraud, nor did they raise the issue of fraud in their posthearing memorandum. At the October 5, 2020 hearing, the plaintiffs' counsel made one reference to fraud, arguing, in a conclusory fashion, that the conduct of the defendant in asking the plaintiffs to consent to the release of a prejudgment remedy "securing . . . payment [to the plaintiffs] knowing that they weren't going to pay [the plaintiffs]" constituted fraud. In its decision denying the motion to restore, the court did not address the issue of fraud beyond noting the general rule that a judgment may be opened beyond the four month period when it is obtained by fraud, duress, or mutual mistake.

One of the grounds raised by the plaintiffs in their motion for reargument and reconsideration was that the court had failed to address the issue of fraud in its decision. On the basis of the limited record before us, it is not clear that the plaintiffs placed the issue of fraud squarely before the court. Inasmuch as the plaintiffs raised the issue distinctly in the motion for reargument and reconsideration, we observe that the purpose of such a motion is not to assert newly raised claims. "Motions for reargument and motions for reconsideration are nearly identical in purpose. [T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . A reconsideration implies reexamination and possibly a different decision by the [court] which initially decided it. . . . [A] reconsideration hearing involves consideration of the trial evidence in light of outside factors such as new law, a miscalculation or a misapplication of the law. . . . [Reargument] also may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 205 Conn. App. 46, 74–75, 256 A.3d 684, cert. denied, 339 Conn. 909, 261 A.3d 744 (2021). In light of the foregoing, we cannot say that the court abused its discretion by failing to conclude that the motion to restore should be granted because of any allegedly fraudulent conduct of the defendant.

[7] Similarly, in *Stamford* v. *Ten Rugby Street, LLC*, 164 Conn. App. 49, 55 n.5, 137 A.3d 781, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016), this court held: "Pursuant to Practice Book § 61-10 (b), 'this court will not decline to review a claim on appeal solely on the basis of a party's failure to seek an articulation.' . . . This court has previously stated that this section does not absolve a defendant of that defendant's duty to preserve the record or prevent the court from declining to review a claim where the record is inadequate for reasons other than the failure to seek an articulation. . . . As we stated in *Gordon* v. *Gordon*, 148 Conn. App. 59, 67–68, 84 A.3d 923 (2014), '[t]he record contains no findings by the court with regard to the defendant's claim. . . . Cognizant that we must make every reasonable presumption in favor of the correctness of the court's decision . . . we are left to conclude on the basis of our review of the limited record provided that the court acted reasonably . . . .' " (Citations omitted.)

[8] The plaintiffs also argue that the present case is akin to *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 192, 884 A.2d 981 (2005), in which our Supreme Court addressed the question of whether this court "properly conclude[d] that the four month limitation period of § 52-212a deprived the trial court of the authority to restore the withdrawn cases to the docket . . . ?" In concluding that the trial court had such authority under the circumstances of that case, our Supreme Court stated: "We conclude that § 52-212a did not preclude the trial court from restoring the withdrawn cases to the docket because the court had continuing jurisdiction over those cases for the limited purpose of adjudicating [a] claim regarding . . . sealed documents." Id., 211. In making its decision, the court relied, in part, on the well settled rule "that a trial court retains the power to modify or lift a protective order that it has entered." (Internal quotation marks omitted.) Id., 214. As the court explained: "Because protective orders operate like injunctions and have the same purpose and effect, and because courts have inherent power to revisit protective orders or injunctions when

a change in circumstances or pertinent law makes it equitable to do so, we see no reason why a protective order that remains in effect more than four months after judgment or withdrawal should be treated any differently, for purposes of § 52-212a, than an injunction that survives that four month period. We conclude, therefore, that, just as a court has continuing jurisdiction to vacate or to modify an injunction after the four month limitation period of § 52-212a has expired, so, too, does a court have continuing jurisdiction to vacate or to modify a protective order after the expiration of that limitation period." Id., 215–16. *Rosado* is clearly distinguishable from the present case, which does not involve an injunction, protective order, or other order that is equitable in nature. Moreover, the continuing jurisdiction of the trial court in *Rosado* was for the limited purpose of adjudicating a certain claim. Although the plaintiffs in the present case claim that the trial court had continuing jurisdiction because a prejudgment remedy was still in effect, that does not translate into authority to adjudicate any claim related to the settlement agreements. We, therefore, reject the plaintiffs' attempt to analogize the present case to *Rosado*.

[9] The issue of whether the plaintiffs' counsel was bound by John Doe's settlement agreement with the defendant stems from the fact that the plaintiffs' attorney had signed the agreement. Above his signature line it reads, "Approved as to Form and Agreed as to Paragraph 9." Paragraph 9 of the agreement provides in relevant part that, by executing the settlement agreement, the plaintiffs' counsel represented that there were "no other persons or entities having any interest in the [s]ettlement amount." At the October 5, 2020 hearing, the defendant's counsel argued that the online posting by the plaintiffs' counsel constituted a breach because counsel "was bound in his right" and as an agent of the plaintiff. The plaintiffs' counsel countered that he "signed as to form and as to paragraph 9 only," and, thus, that he was not a party to or bound by the agreement, except with respect to paragraph 9.

[10] We also find unavailing the plaintiffs' claim that "the trial court was never without jurisdiction . . . ." The plaintiffs base that claim on the trial court's order of December 9, 2019, placing the case "on the settled but not withdrawn list for May 1, 2020." According to the plaintiffs, the court had continuing jurisdiction until May 1, 2020. We are not persuaded. The trial court found that the December 9, 2019 order did not restore the case to the docket, and we agree with that finding, as the action already had been withdrawn on November 15, 2019, prior to the issuance of that order. See generally *Law Offices of Frank N. Peluso*, *P.C.* v. *Cotrone*, supra, 178 Conn. App. 423–24.

[11] We note that the plaintiffs' amended motion for reargument and reconsideration corrected a scrivener's error in their original motion for reargument and reconsideration and was identical to the original motion in all other material respects. For simplicity, we refer to the amended motion for reargument and reconsideration in addressing this claim.

[12] The court also summarily denied their original motion for reargument and reconsideration.

[13] Our review of the transcript of the October 5, 2020 hearing demonstrates that the plaintiffs' counsel never requested to be able to present testimony from any witnesses.

[14] Notably, in the present case, the parties disagree as to whether the plaintiffs' counsel is bound by and violated the confidentiality provision of John Doe's settlement agreement and as to whether the actions of Bob Doe violated the confidentiality provision of his settlement agreement with the defendant.