******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ROBERT J. KRASKO ET AL. *v.*
# ROBERT KONKOS ET AL.
## (AC 45875)

Elgo, Moll and Suarez, Js.

*Syllabus*

The plaintiffs, owners of certain real property in Easton that is benefitted
by a right-of-way easement over the defendants' neighboring property,
sought, inter alia, a mandatory injunction requiring the defendants to
consent to the removal of a utility pole that provided electrical services
to the defendants' property and obstructed the easement and to upgrade
the electrical connection between the defendants' house and a new
utility pole that had been erected on the plaintiffs' property so that the
connection complied with the building code then in effect. Prior to the
commencement of trial, the attorneys for the parties attended a pretrial
conference before the trial court. Thereafter, pursuant to *Audubon Park-
ing Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.* (225 Conn.
804), the plaintiffs filed a motion to enforce a settlement agreement that
they claimed the parties had entered into at the pretrial conference. In
their motion, the plaintiffs asserted that the parties had discussed and
orally agreed on the location of an underground conduit for the defen-
dants' new electrical service at the pretrial conference and that, subse-
quently, the defendants refused to allow the plaintiffs to perform the
work that was agreed on or to implement the settlement agreement.
The plaintiffs attached an exhibit to their motion, which they drafted
after the pretrial conference to outline the terms of the parties' alleged
agreement. The defendants objected to the plaintiffs' motion, asserting
that, although the parties had attempted to reach an agreement at the
pretrial conference, they never did so, as they failed to reach a consensus
regarding the location and scope of the expected work and the length
of time it would take. Following a remote status conference, the trial
court went on the record to hear arguments from the parties' counsel
and then incorporated the additional terms that were discussed by the
defendants' counsel into the settlement agreement as it was outlined in
the exhibit. The defendants' counsel discussed the modified settlement
agreement with the defendants during a short recess and then informed
the trial court that the defendants did not consider the modified settle-
ment agreement to be agreeable. Thereafter, the trial court granted the
plaintiffs' motion to enforce the settlement agreement, subject to the
terms and conditions of the exhibit, as modified by the court and
reflected in the transcript of that day's proceeding. On the defendants'
appeal to this court, *held* that the trial court abused its discretion in
granting the plaintiffs' motion to enforce a settlement agreement because
the parties did not reach a clear and unambiguous agreement either at

or following the pretrial conference: the trial court treated the exhibit as an agreement binding on the parties despite the fact that there was nothing in the record, beyond the plaintiffs' reliance on the exhibit, to demonstrate that an agreement had been reached, the agreement was unsworn, and the defendants repeatedly disputed that they had entered into the agreement; moreover, even if the trial court had assumed that the exhibit memorialized an agreement between the parties, when faced with numerous issues concerning the adequacy of the agreement and after acknowledging that a material term of the settlement was not agreed on, the court failed to hold an *Audubon* hearing to determine whether the parties had a clear and unambiguous agreement and, instead, issued an order granting the plaintiffs' motion subject to the terms and conditions as modified by the court; accordingly, this court reversed the judgment of the trial court and remanded the case with direction to deny the plaintiffs' motion to enforce the settlement agreement.

Argued October 3, 2023—officially released April 9, 2024

*Procedural History*

Action seeking, inter alia, an injunction requiring the named defendant et al. to consent to the relocation of a utility pole that obstructed the plaintiffs' easement, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Stevens, J.*, granted the plaintiffs' motion to cite in Frontier Communications Corporation et al. as party defendants; thereafter, the court, *Hon. Dale W. Radcliffe*, judge trial referee, granted the plaintiffs' motion to cite in Owned Wealth, LLC, et al. as party defendants; subsequently, the plaintiffs withdrew their complaint against the defendant Margaret Mary Kane; thereafter, the court, *Hon. Dale W. Radcliffe*, judge trial referee, granted the plaintiffs' motion to enforce a settlement agreement, and the named defendant et al. appealed to this court. *Reversed*; *judgment directed.*

*Prerna Rao*, for the appellants (named defendant et al.).

*Alan R. Spirer*, for the appellees (plaintiffs).

*Opinion*

SUAREZ, J. The defendants Robert Konkos and Chelsea Konkos (collectively, Konkos defendants); 105 Honeysuckle Trust, dated March 9, 2021, Owned Wealth, LLC, as trustee; and Owned Wealth, LLC,[1] appeal from the judgment of the trial court granting a motion brought by the plaintiffs, Robert J. Krasko and Francis L. O'Neill, to enforce a settlement agreement allegedly entered into between the parties at a pretrial conference. On appeal, the defendants claim that the trial court erred in granting the plaintiffs' motion to enforce in the absence of a clear and unambiguous agreement. We reverse the judgment of the court.

The following procedural history and undisputed facts are relevant to the resolution of this appeal. The plaintiffs are the owners of real property located in Easton (plaintiffs' property). The defendant Owned Wealth, LLC, as trustee, is the legal owner of the abutting property (defendants' property). See footnote 1 of this opinion.

---

[1] The plaintiffs initially commenced the underlying action against only the Konkos defendants. On January 22, 2020, the plaintiffs moved to cite in Frontier Communications Corporation (Frontier) and Margaret Mary Kane as defendants in the underlying action. On February 3, 2020, the court, *Stevens, J.*, granted the plaintiffs' motions and added Frontier and Kane as defendants to the underlying action. On July 6, 2022, the plaintiffs moved to cite in 105 Honeysuckle Trust, dated March 9, 2021, Owned Wealth, LLC, as trustee, and Owned Wealth, LLC, as additional defendants. In their motion to cite in additional party defendants, the plaintiffs represented that, "[o]n January 27, 2022, [the Konkos defendants] transferred title to [their premises] . . . to 105 Honeysuckle Trust, dated March 9, 2021, Owned Wealth, LLC, as trustee . . . . Although the record owner of the premises is now 105 Honeysuckle Trust, dated March 9, 2021, Owned Wealth, LLC, as trustee . . . [the Konkos defendants] are the beneficial owners of and exercise dominion and control over the premises." On July 18, 2022, the court, *Hon. Dale W. Radcliffe*, judge trial referee, granted the plaintiffs' motion. On September 20, 2022, the plaintiffs withdrew their complaint against Kane. Frontier and Kane are not participating in this appeal. The remaining defendants are all represented by the same counsel. We hereinafter will refer to the remaining defendants collectively as the defendants.

Margaret Mary Kane, a home construction contractor, was the original owner of the plaintiffs' property. Kane filed a proposed site plan, dated December 16, 2015, with the town of Easton for the construction of the plaintiffs' home. In the site plan, Kane specified that a utility pole existing on the plaintiffs' driveway would be removed and relocated. On December 29, 2015, an easement, benefiting the plaintiffs' property and burdening the defendants' property, was set forth in an Easement and Mutual Driveway Agreement and recorded in the Easton land records (easement). The easement granted the plaintiffs' property a perpetual twenty-five foot right-of-way over the defendants' property. The plaintiffs' driveway and the utility pole are located within this right-of-way easement. Frontier Communications Corporation (Frontier), which owns and maintains the utility pole, subsequently erected a new utility pole on the plaintiffs' property in accordance with the site plan. The original utility pole located on the plaintiffs' driveway, however, was never removed and currently is being used to provide electrical services to the defendants' property. On August 9, 2018, Kane entered into a written contract with the plaintiffs for the purchase and sale of the plaintiffs' property.

The plaintiffs commenced the present action on August 9, 2019. In their amended complaint, dated July 18, 2022, the plaintiffs alleged that they "have a perpetual easement over, under, and across a twenty-five . . . foot right-of-way to the plaintiffs' [property] and which easement burdens the defendants' [property] as set forth in [the easement]. . . . [Frontier] owns an overlapping easement to maintain utility poles . . . . The plaintiffs' ability to use the easement is obstructed by the location of a utility pole owned and maintained by Frontier and located within the right-of-way that is the subject of the easement. . . . The removal of the old utility pole, which obstructs the plaintiffs' driveway,

requires that electrical service to the defendants' house be transferred from the old [utility] pole to the new utility pole. . . . The foregoing transfer of the electrical service requires that the defendants upgrade their electrical connection between the new utility pole and [the defendants'] house to comply with the building code currently in force and effect. . . . The defendants have failed and refused to upgrade their electrical connection to comply with the building code currently in effect. . . . Despite due demand, the defendants have failed and refused to consent to allowing Frontier to relocate the said utility pole and have refused to upgrade their electrical connection as required. . . . As a result of the actions of the defendants . . . the plaintiffs have been prevented from enjoying and using the easement." In their prayer for relief, the plaintiffs sought (1) a mandatory injunction requiring the Konkos defendants to consent to the removal of the utility pole that obstructs the easement, (2) a mandatory injunction requiring the Konkos defendants to upgrade their electrical connection between their house and the utility pole so that the electrical connection complies with the current building code, and (3) such other relief to which the plaintiffs may be entitled. On September 4, 2019, the Konkos defendants, who were self-represented litigants at that time but subsequently were represented by counsel, filed answers and what they characterized as special defenses. Beyond disputing several of the factual allegations in the complaint, they alleged what they considered to be numerous obstacles that made the relief sought by the plaintiffs not feasible at that time.

A bench trial was scheduled for September 22, 2022. On August 18, 2022, the attorneys for the parties attended a remote pretrial conference held before the court, *Hon. Dale W. Radcliffe*, judge trial referee.[2] On

---

[2] The attorneys for the parties participated in the August 18, 2022 pretrial conference; the parties, themselves, were available by telephone.

September 15, 2022, just seven days before the date on which the trial was scheduled to commence, the plaintiffs filed, pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 812, 626 A.2d 729 (1993) (*Audubon*),[3] a motion to enforce a settlement agreement that they claimed the parties entered into at the August 18, 2022 pretrial conference. The plaintiffs did not represent in their motion, however, that the purported agreement had been reduced to writing or articulated on the record. Instead, the plaintiffs stated that the parties had discussed and agreed on the location of an underground conduit for the defendants' new electrical service. Specifically, the plaintiffs asserted that the defendants initially "wanted the conduit to be located under their driveway." They further asserted that, at the pretrial conference, the defendants "agreed that the conduit would be installed by crossing the driveway and would be located exclusively in the lawn areas of their property." Attached to their motion, the plaintiffs submitted an exhibit (exhibit A), which they drafted after the pretrial conference to outline the terms of the parties' agreement.[4] Last, the plaintiffs represented in their

[3] "In *Audubon*, our Supreme Court shaped a procedure by which a trial court could summarily enforce a settlement agreement to settle litigation. . . . The court held that a trial court may summarily enforce a settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement. . . . [S]ee also *Reiner* v. *Reiner*, 190 Conn. App. 268, 270 n.3, 210 A.3d 668 (2019) ([a] hearing pursuant to *Audubon* . . . is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law . . . )." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Bemer*, 215 Conn. App. 504, 523, 283 A.3d 1074 (2022).

[4] Exhibit A, which is unsigned and titled "Settlement Agreement re: *Krasko* vs. *Konkos*," states in relevant part: "The plaintiffs and the defendants accept Judge Radcliffe's settlement recommendations as follows:

"(1) The plaintiffs, at [their] expense, will expeditiously undertake the following actions to enable [Frontier] to remove a utility pole which obstructs the plaintiffs' use of a right-of-way shared by the plaintiffs and the defendants . . . and allow the plaintiffs and the . . . defendants to utilize a new utility pole (already in place): (a) Engage a reasonable contractor to upgrade the electrical

motion to enforce that the defendants "now advise that they will not allow the plaintiffs to perform the agreed upon work and have refused to implement the settlement agreement."

On September 15, 2022, the plaintiffs filed a motion to continue the September 22, 2022 trial date. The motion to continue was based on the filing of the motion to enforce the purported settlement agreement. The defendants objected to the motion to continue, characterizing it as a delay tactic. On September 19, 2022, the court, *Tyma, J.*, granted the plaintiffs' motion to continue the trial but ordered that a remote status conference be held before Judge Radcliffe.

On September 20, 2022, the defendants filed an objection to the plaintiffs' motion to enforce the settlement agreement. In their objection, the defendants asserted that, at the pretrial conference held on August 18, 2022, "the court made recommendations and provided instructions to the parties that if they could reach an agreement

service connection between the [defendants'] house and the new utility pole to comply with the current building code by installing an underground conduit for the said electrical service; (b) Designate a location for the installation of the said conduit which location will avoid any adverse impact of the said installation on the [defendants'] subsurface sewage disposal system or mature trees on the [defendants'] property; (c) Allow [the defendants] to review the location for the said installation prior to installation; (d) Apply for all necessary permits and approvals for the said installation; (e) Make arrangements with utility providers to transfer utility service/connections to the new utility pole; and (f) Arrange for [Frontier] to remove the old utility pole. . . .

"(2) The defendants . . . will consent to the plaintiffs and [their] agents, servants, contractors, and employees to enter onto [the defendants'] property to designate the location for the installation of the conduit and to perform the work set forth in paragraph 1; will cooperate in all permits and applications for the work; and will consent to [Frontier] removing the old utility pole.

"(3) Upon the completion of the work set forth in paragraph 1, the plaintiffs shall pay to counsel for [the defendants], the sum of $2500 and . . . Kane will pay to counsel for [the defendants], the sum of $7500.

"(4) Upon the completion of the work, all parties to the action . . . will exchange releases and all claims and counterclaims in the action will be withdrawn."

based on those recommendations, then to alert the court clerk but that otherwise, the trial date would remain on the court calendar . . . . The parties attempted to reach an agreement but never did. Importantly, the parties never reached an agreement on two material terms inter alia: the location/scope of the expected work[5] and the length of time it would take." (Footnote in original.) On September 22, 2022, the court held a remote status conference off the record. Thereafter, the court went on the record and the following colloquy among the defendants' counsel, the plaintiffs' counsel, and the court took place:

"The Court: All right. . . . [W]e have discussed this matter off the record at length. I did ask the court reporter to log on so that we would be on the record. I indicated that this matter had been the subject of extensive discussions on a prior occasion where there was . . . an agreement . . . . I have before me a motion to enforce a settlement agreement and an objection thereto. The motion [to enforce] a settlement agreement contains an exhibit, which I propose to read into the record, because I believe that there was a meeting of the minds the last time we were here. The only matter that was left pending was the location of the conduit, and that would await the selection of a contractor. . . . [Defendants' counsel], you have filed an objection to that motion, I will . . . hear you at this time.

"[The Defendants' Counsel]: Thank you, Your Honor. I vehemently disagree with the court's characterization of our discussion that occurred at the last pretrial as an agreement. It . . . was a pretrial. Your Honor made recommendations based on the discussions that were had.

---

[5] "Interestingly, the plaintiffs insisted throughout the negotiations on inserting a drawing dictating the location of the conduit as an attachment to the proposed agreement, to which the defendants objected repeatedly—that attachment is missing from the plaintiffs' attempt at representing that some agreement was reached and is also not the last iteration of drafts exchanged. Other material terms regarding warranty, right of entry on the defendants' property by the plaintiffs, and other such terms are also missing from the attachment."

And then further instructed us to see if we could hammer out an agreement based on those recommendations. I would like to note that the trial date was kept on, after that pretrial. And part of Your Honor's instructions to us were to contact the clerk's office, or file a caseflow request, if an agreement was reached to mark off the trial date. Otherwise to keep the trial date on for the time being . . . in case we [were not] able to reach an agreement. . . .

"[T]he clients never presented themselves during the pretrial. This was just a discussion amongst lawyers, where we presented our arguments and . . . tried to see if there was a way forward based on those discussions. Without waiving any objections, even if the court did find that there was some sort [of] agreement, the court still instructed us to come up with some sort of written agreement that included additional terms. . . .

"The Court: What terms were not . . . discussed? . . .

"[The Defendants' Counsel]: . . . [P]art of my issue, Your Honor . . . is that this exhibit, that was attached to the motion, is not the most recent iteration of the . . . drafts that were exchanged by the parties. . . .

"The Court: What is included in the more recent iteration that is not included in exhibit A?

"[The Defendants' Counsel]: For example, Your Honor, the discussions that we had about the warranty that . . . would be provided by the contractor for the work that would be done, or contemplated to be done. . . .

"The Court: What is the language? You said that they were not included in the . . . latest draft. What language is included in that paper that was not included in exhibit A? . . .

"[The Defendants' Counsel]: In paragraph 1 where it says . . . 'which obstructs the plaintiffs' use of a right of a way.'

"The Court: All right.

"[The Defendants' Counsel]: We had specifically removed that because there was never an agreement. . . . [T]hese proceedings have been about . . . whether or not there's an obstruction. . . .

"The Court: . . . You object to the words, 'which obstructs the plaintiffs' use of the right-of-way.' . . .

"[The Defendants' Counsel]: . . . [T]here was an additional paragraph G. . . . That the plaintiffs shall complete the work within four months of the receipt of all required electrical components by the electrician. And to use all reasonable efforts to complete the work by the end of January, which deadline is subject to supply chain issues. . . . And importantly there was a paragraph H; the plaintiff[s] shall restore all areas to the [defendants'] property that are disturbed by the work to their original condition.

"The Court: Well, I think that goes without saying. . . . [The exhibit] appears to include everything that was included with the exception of that four month period, which certainly appears to be reasonable because it's subject to supply chain issues.

"[The Defendants' Counsel]: . . . [T]hat the funds be paid within thirty days of signing the agreement, which there . . . was no signing or an agreement. . . .

"The Court: . . . [T]hat wasn't part of the original agreement that we discussed . . . last time. It was that the payment would be made when the work was . . . completed. And . . . a reasonable time is implied. But we can say within thirty days, that's easy. . . .

"[The Defendants' Counsel]: There was . . . an added paragraph 5, where the defendants and their . . . tenants or invitees will have access to the property, and ingress or egress throughout the duration of the project without interruption. . . .

"The Court: . . . [N]obody would object to that. May I say, I don't think they have the ability to . . . stop them, that's up to your client.

"[The Defendants' Counsel]: Part of the draft also included an added paragraph 6, that downtime . . . as far as interruption of services, shall be reduced to a minimum . . . . [W]hat we had asked for was . . . in any instance where the [defendants'] property is left without power for longer than two hours. And I believe that there was some understanding or contemplation of a generator being provided for any interruption of services beyond two hours to prevent flooding or other damages. . . .

"The Court: . . . [T]hat was not part of our agreement, when we were here before. But this whole agreement can be subject to minimizing any downtime due to lack of electrical services.

"[The Defendants' Counsel]: Other language that was in the draft, Your Honor . . . to ensure that the . . . defendants will be given at least twenty-four hours' notice with a description of the work anticipated to be performed prior to entry on their property by anyone performing the work.

"The Court: What? No, that wasn't discussed.

"[The Defendants' Counsel]: . . . [T]hat's part of my objection, Your Honor, is that . . . there were recommendations, and we attempted to find an agreement . . . .

"The Court: We set forth . . . everything that had to be done. Now we're getting . . . to a point where this is frivolous. We set forth . . . an agreement that the money . . . would be paid. . . . [I]t was agreed upon. The amount of money was agreed upon. It was agreed that the work would be done, a new pole would be installed, that has been [done]. And the electrical equipment would be relocated to that pole. And a conduit would be dug, not in a specific location, but would be dug in a way that

did not impact several things on the property. That's what we discussed, and that's what I'm prepared to order because each of you indicated that you had the authority of your client[s] to enter into that agreement. . . .

"[The Defendants' Counsel]: Part of the additional discussion was a release of the lis pendens[6] that was filed against my clients' property on land records . . . the release to be filed immediately.

"[The Plaintiffs' Counsel]: That will be done, Your Honor.

"The Court: All right. . . . It's agreed. . . .

"[The Defendants' Counsel]: And if I may for the record, Your Honor . . . I also respectfully disagree with any characterization that any of these requests are frivolous. . . . [T]here are far more detailed items that are requested by people who are simply asking for work by contractors for their own property, which are considered contractual terms, material terms, and . . . enforceable terms. We never came to an agreement on . . . a number of these items. And these drafts were being exchanged back and forth pursuant to recommendations made at a pretrial, which is a normal occurrence that happens during the course of every litigation. And sometimes we don't come to an agreement.

"The Court: But each of you . . . were [specifically] asked if you had the authority of your client to enter into an agreement on these terms and conditions, and you each said yes. . . . Now he's adding additional terms.

"[The Defendants' Counsel]: . . . I believe that my client's entitled to his . . . reasonably short day in court

---

[6] "[A] notice of lis pendens . . . when properly recorded, warns third parties, such as prospective purchasers, that the title to the property is in litigation . . . ." (Internal quotation marks omitted.) *Gibson* v. *Jefferson Woods Community, Inc.*, 206 Conn. App. 303, 312, 260 A.3d 1244, cert. denied, 339 Conn. 911, 261 A.3d 747 (2021).

. . . and to be able to state these things . . . as to why there was no agreement reached . . . .

"The Court: No, he won't be able to . . . tell them why . . . an agreement was not reached, because pretrial negotiations are not part of any trial. . . . [H]e will not get an opportunity to vent on that issue." (Footnote added.)

After hearing arguments by counsel, the court incorporated the additional terms that were discussed by the defendants' counsel into the settlement agreement as outlined in exhibit A. The court stated: "All right. Well, there is before me a motion to enforce a settlement agreement. Now this . . . motion references [our] Supreme Court['s] decision in *Audubon* . . . that if a settlement agreement is reached, that the court can enforce the settlement agreement by an order.

"Now I believe that . . . exhibit A does set forth the basis on which the agreement was completed. And the last time the parties were here, this was discussed at length. And there was a . . . meeting of the minds regarding certain basic terms and conditions. Now there have been some additional terms and conditions . . . or clarification, I should say, of the terms and conditions that were not included in this . . . exhibit. And I'm going to set them forth for the . . . record at this point.

"The [defendants] have objected to the language in exhibit A, which says that the utility pole . . . obstructs [the plaintiffs'] use of a right-of-way. . . . That is of course an ultimate issue in the case, and as part of the agreement, they did not necessarily agree that the right-of-way would be obstructed. So, the first paragraph of the exhibit would read that . . . at the plaintiffs' expense will undertake the following actions to enable Frontier . . . to remove a utility pole and to allow the plaintiffs and the . . . defendants to utilize a new utility pole, which is already in place. There . . . is no agreement that they concede that the pole obstructs access to the property.

. . . [Second], design a location for the installation of the conduit, which location would avoid any adverse impact . . . on the [defendants'] subservice disposal system or mature trees on the property. . . . Third, to allow the defendants . . . to review the location of the installation prior to the [conduit] installation.

"This is where I have a . . . problem with granting the motion . . . to enforce a settlement in its entirety. Because the . . . specific location was not agreed upon. The only thing that was agreed upon was that the conduit would go over the lawn or grass area—over the driveway and—not under the driveway . . . and would be in a location chosen by the contractor . . . . And the defendants agreed that they would consent to the location over the grass, provided those conditions were met. The plaintiffs would apply for the necessary permits, would make arrangements to transfer the utility service, and arrange for Frontier to remove the utility pole. . . .

"Now there was also some discussion about the time. And the plaintiffs have indicated here, and I'll make it a part of any agreement, that they complete the work within four months of the pulling of any permits and the receipt of any components subject to supply chain issues. So, that four month period is certainly a reasonable request. The . . . exhibit did not say, but I believe it's implied in the agreement, that the contractor will restore all disturbed areas to their prior condition. And the court will order that as . . . part of any agreement. . . .

"The defendant[s] [have] asked that there be no restrictions upon tenants or presumably real estate agents or anyone else at the request of the defendant[s] being refused entry to the property. And that certainly would go without . . . saying. That the . . . plaintiffs agree to minimize any disruption of electrical power to the home during the course of the installation of the conduit, and it's expected that that can be done within a few hours. . . .

"Now finally any lis pendens on the property would be released. I believe those were the terms that were agreed to the last time, I believe that the additions were implicit in what was agreed to. But I am explicitly stating them for the record at this point."

Following the court's clarification of the additional terms that were not in plaintiffs' exhibit A, the court took a recess and the defendants' counsel discussed the modified settlement agreement with her clients. After the recess, the defendants' counsel reported to the court that her clients did not consider the modified settlement agreement, with the additions made by the court, to be agreeable. The court then issued an oral decision, granting the plaintiffs' motion to enforce the settlement agreement, subject to the terms and conditions in the plaintiffs' exhibit, as modified by the court and as reflected in the September 22, 2022 transcript. The court held that, "when this matter was last here [on August 18, 2022] . . . there was a meeting of the minds as to all material terms, that the matters to be resolved did not go to the essence of the agreement, but were matters subject to further discussion among the parties. The essential terms, which were agreed to, involve the relocation of . . . the electrical services, the path that a conduit would take to the property. And those terms were agreed to by all of the . . . parties. And I've read them into the record, including the additional clarifications, which of course don't go to the essence of the agreement but are incorporated by . . . reference."

Thereafter, on September 22, 2022, the court issued a written order granting the plaintiffs' motion to enforce the settlement agreement. Specifically, the court ordered that the "[m]otion is granted as to terms and conditions set forth in exhibit A, as more fully explained and clarified in a transcript of September 22, 2022, which will be signed as the decision of the court. It is found that a meeting of the minds occurred, and that issues remaining to be

discussed did not impact the essence of the agreement at an earlier pretrial conference. The agreement has been partially performed, through the deposit of certain monies into escrow, which monies are being held by [the plaintiffs' attorney]. Enforcement of the settlement agreement, under these circumstances is warranted. *Wittman* v. *Intense Movers, Inc.*, 202 Conn. App. 87, [245 A.3d 479, cert. denied, 336 Conn. 918, 245 A.3d 803] (2021)." This appeal followed.

On appeal, the defendants claim that the court erred in granting the plaintiffs' motion to enforce. In support thereof, they assert that the parties did not reach a clear and unambiguous agreement either at or following the August 18, 2022 pretrial conference. We agree and, accordingly, reverse the judgment of the court.

We begin our analysis by setting forth the relevant standard of review and legal principles that govern our review. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. . . . Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial. . . . Nevertheless, the right to enforce summarily a settlement agreement is not unbounded. The key element with regard to the settlement agreement in *Audubon* . . . [was] that there [was] no factual dispute as to the terms of the accord. Generally, [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement. . . . The rule of *Audubon*

effects a delicate balance between concerns of judicial economy on the one hand and a party's constitutional rights to a jury and to a trial on the other hand. . . . To use the *Audubon* power outside of its proper context is to deny a party these fundamental rights and would work a manifest injustice." (Citations omitted; internal quotation marks omitted.) *Reiner* v. *Reiner*, 190 Conn. App. 268, 276–77, 210 A.3d 668 (2019).

"A settlement agreement is a contract among the parties. . . . In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. . . . The mutual understanding must manifest itself by a mutual assent between the parties. . . . In other words, [i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. . . . Meeting of the minds is defined as mutual agreement and assent of two parties to contract to substance and terms. It is an agreement reached by the parties to a contract and expressed therein, or as the equivalent of mutual assent or mutual obligation. . . . This definition refers to fundamental misunderstandings between the parties as to what are the essential elements or subjects of the contract. It refers to the terms of the contract, not to the power of one party to execute a contract as the agent of another." (Citations omitted; internal quotation marks omitted.) *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 824–25, 277 A.3d 200 (2022).

"A contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation. The law does not . . . regard an arrangement as completed which the parties regard as incomplete. . . . In construing the agreement . . . the

decisive question is the intent of the parties *as expressed.* . . . The intention is to be determined from the language used, the circumstances, the motives of the parties and the purposes which they sought to accomplish. . . . Furthermore, [p]arties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated. . . .

"Finally, [t]he fact that parties engage in further negotiations to clarify the essential terms of their mutual undertakings does not establish the time at which their undertakings ripen into an enforceable agreement . . . [and we are aware of no authority] that assigns so draconian a consequence to a continuing dialogue between parties that have agreed to work together. We know of no authority that precludes contracting parties from engaging in subsequent negotiations to clarify or to modify the agreement that they had earlier reached. . . . More important . . . [when] the general terms on which *the parties indisputably had agreed* . . . included all the terms that were essential to an enforceable agreement . . . [u]nder the modern law of contract . . . the parties . . . may reach a binding agreement even if some of the terms of that agreement are still indefinite." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Wittman* v. *Intense Movers, Inc.*, supra, 202 Conn. App. 98–99.

"In *Vance* v. *Tassmer*, 128 Conn. App. 101, 16 A.3d 782 (2011), appeal dismissed, 307 Conn. 635, 59 A.3d 170 (2013), this court considered whether, in summarily enforcing a settlement agreement, a trial court had exceeded the scope of the agreement . . . . In reviewing that claim, this court explained that [i]t is axiomatic that courts do not rewrite contracts for the parties. . . . In determining whether the court went beyond the scope of the settlement agreement . . . we review the court's decision for an abuse of discretion. . . . [T]he court's authority in such a circumstance is limited to enforcing the undisputed terms of the settlement agreement that are

clearly and unambiguously before it, and the court has no discretion to impose terms that conflict with the agreement." (Citations omitted; internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, 210 Conn. App. 725, 761, 271 A.3d 141 (2022).

"Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . Inherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court . . . . Under that standard, we must make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Palumbo* v. *Barbadimos*, 163 Conn. App. 100, 110–11, 134 A.3d 696 (2016). "It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds." (Internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, supra, 210 Conn. App. 757.

As previously indicated in this opinion, a court has the inherent power to summarily enforce a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. *Reiner* v. *Reiner*, supra, 190 Conn. App. 276. The court may, under *Audubon*, hold a hearing to determine whether the terms of an agreement are clear and unambiguous. Id., 270 n.3. The court is limited, however, to enforcing clear and unambiguous terms. See id., 277. The court does not have the discretion to impose terms that conflict with the agreement. See id.

As a preliminary consideration in our analysis, we note that the procedural history set forth previously in this opinion reflects that the defendants asserted in response to the plaintiffs' motion to enforce that, despite their efforts at and following the August 18, 2022 pretrial conference, they never reached a settlement agreement with the plaintiffs. Thus, this is not a situation in which the sole issue before the court was whether one or more terms of a settlement agreement that had been indisputably entered into between the parties was clear and unambiguous. Rather, the defendants' objection to the motion to enforce put before the court the factual issue of whether a settlement agreement existed in the first place. "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." (Citation omitted; internal quotation marks omitted.) *Rosenblit* v. *Laschever*, 115 Conn. App. 282, 288, 972 A.2d 736 (2009).

The plaintiffs relied on exhibit A as evidence of a settlement agreement reached between the parties. The defendants repeatedly disputed that they had entered into such agreement.[7] The court, however, appears to have treated

---

[7] Before this court, the defendants aptly argue that "[t]here is no evidence in the record that the proposed settlement terms [in exhibit A] were anything more than recommendations by Judge Radcliffe meant as a starting point to complete an agreement in the future. Nothing was put on the record at the time of the pretrial. The trial remained on the schedule. The defendants even issued a trial subpoena prior to the filing of the motion to enforce, showing they clearly did not believe there was an agreement. The only 'evidence' [of an agreement] before the trial court was argument from counsel."

exhibit A—a disputed and unsworn submission of one party—as an agreement binding the parties. It is not clear from the record what led the court to this determination. The court did not conduct a hearing on the motion to enforce to thereby afford the parties an opportunity to present evidence with respect to the inherently fact bound issue of whether the parties had, in fact, entered into a contract to avoid a trial.[8] The failure to thoroughly explore the issue of whether a settlement agreement existed was all the more glaring in this case because the parties had not reported such an agreement to the court on the record during the course of a court proceeding prior to the time at which the plaintiffs sought to enforce the purported agreement. "A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement agreement is reported to the court during the course of a trial or other significant court-room proceedings." (Internal quotation marks omitted.) *Audubon Parking Associates, Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 811.[9] Here, it appears

---

[8] We note that the court heard only arguments by counsel during the status conference, and the court referenced this court's decision in *Wittman* v. *Intense Movers, Inc.*, supra, 202 Conn. App. 98, for the principle that, if a settlement agreement is reached, the court may enforce the agreement by an order. We note that *Wittman* is factually distinct from the present case. In *Wittman*, the trial court granted a motion to enforce a settlement agreement, but only after holding a hearing during which the parties presented evidence with respect to the existence and nature of the agreement. Id., 92–93. Specifically, the defendants offered email correspondence between themselves and the plaintiff's attorney to establish that the parties had reached a settlement agreement. Id., 91–92. The court entered the emails into evidence as full exhibits; id., 92; and relied on them in determining that the parties had reached a settlement agreement. Id., 93–94, 96. In the present case, unlike in *Wittman*, the trial court did not have any evidence before it to conclude that the parties had entered into a settlement agreement. Therefore, the court's reliance on *Wittman* in enforcing a settlement agreement between the parties was misplaced.

[9] "In the majority of cases where settlement agreements have been summarily enforced pursuant to *Audubon*, the agreement at issue was either read directly into the record or otherwise reported to the court. In the cases where a settlement agreement was not directly presented to the court in full, it nevertheless was in some sense placed before the court during pending litigation. *Ackerman* v. *Sobol Family Partnership, LLP*, [298 Conn. 495, 499, 4 A.3d 288 (2010)] ('[a]t

to be undisputed that the parties made attempts to reach an agreement after the August 18, 2022 pretrial conference. Beyond the plaintiffs' reliance on exhibit A, there was nothing on the record to demonstrate to the court that an agreement had been reached.

Moreover, even assuming that exhibit A memorialized an agreement between the parties, the court, faced with numerous issues concerning the adequacy of the agreement, thereafter did not hold a hearing pursuant to *Audubon* to determine whether the parties had a clear and unambiguous agreement. Rather, after hearing argument from the parties, and after acknowledging that a material term of the settlement was "not agreed upon," the court issued an order granting the plaintiffs' motion to enforce a settlement agreement subject to the terms and conditions as modified by the court. The record is clear that the parties did not reach a clear and unambiguous agreement. Therefore, the court abused its discretion in granting the motion to enforce.

The judgment is reversed and the case is remanded with direction to deny the plaintiffs' motion to enforce a settlement agreement.

In this opinion the other judges concurred.

---

the time the [pretrial] mediation was concluded, a settlement had not been reached . . . although [the mediating judge] did remain active in further negotiations between the parties,' which ultimately resulted in a settlement agreement reached through out-of-court letters and phone calls, one week before trial . . . ); see id., 517; *Maharishi School of Vedic Sciences, Inc. (Connecticut)* v. *Connecticut Constitution Associates Ltd. Partnership,* 260 Conn. 598, 600–601, 799 A.2d 1027 (2002) (after '[t]rial on the matter commenced . . . the parties informed the court that they had reached an agreement in principle' but finalized details later, during out-of-court negotiations); *Tirreno* v. *The Hartford,* 161 Conn. App. 678, 681, 129 A.3d 735 (2015) ('[f]ollowing a pretrial conference . . . [settlement] terms were agreed to orally, memorialized in a series of e-mails exchanged between counsel, and later testified to by [the reneging party's] counsel [before the court at an *Audubon* hearing]')." (Footnote omitted.) *Matos* v. *Ortiz,* 166 Conn. App. 775, 806–808, 144 A.3d 425 (2016).